917 F.2d 1306
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael DIXON, Petitioner-Appellant,
v.
Jack R. DUCKWORTH, Respondent-Appellee.
 No. 90-1708.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 30, 1990.*
Decided Nov. 5, 1990.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division, No. S89-492, Allen J. Sharp, Chief Judge.
 N.D.Ind., 524 N.E.2d 2
 AFFIRMED.
 Before BAUER, Chief Judge, and WOOD, JR. and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Michael Dixon appeals pro se from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. Dixon challenges his conviction on essentially five grounds. Upon review of the record, we conclude that the district court properly identified and resolved the issues presented on appeal. We also conclude that the district court properly denied Dixon's motion to strike the respondent's return. See Clutchette v. Rushen, 770 F.2d 1469 (9th Cir.1985), cert. denied, 475 U.S. 1088 (1986); Kramer v. Jenkins, 108 F.R.D. 429 (N.D.Ill.1985). We therefore affirm the judgment of the district court for the reasons stated in the attached memorandum and order.
 
 
 2
 AFFIRMED.
 
 
 3
 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF INDIANA
 
 SOUTH BEND DIVISION
 MICHAEL DIXON, Petitioner
 
 4
 v.
 
 JACK R. DUCKWORTH, Respondent
 Civil No. S 89-492
 MEMORANDUM AND ORDER
 
 5
 On October 20, 1989, pro se petitioner, Michael Dixon, filed a petition seeking relief under 28 U.S.C. Sec. 2254. The return filed on January 10, 1990, demonstrates the necessary compliance with Lewis v. Faulkner, 689 F.2d 100 (7th Cir.1982). The petitioner filed a response to the return on January 22, 1990. The state court record has been filed here and examined pursuant to the mandates of Townsend v. Sain, 372 U.S. 293 (1963). The court now denies the petition.
 
 I.
 
 6
 On March 7, 1986, the petitioner was convicted of the offense of burglary as a result of a jury verdict in the Vigo Circuit Court in Terre Haute, Indiana. He was sentenced to a term of fifty years as a result of having been found a habitual offender.
 
 
 7
 On direct appeal, the Supreme Court of Indiana, speaking through Chief Justice Shepard, unanimously affirmed the petitioner's conviction in Dixon v. State, 524 N.E.2d 2 (Ind.1988). No post-conviction proceedings have been initiated.
 
 
 8
 A facial examination of Chief Justice Shepard's opinion indicates that there were five issues presented to the Supreme Court of Indiana. Here, five similar issues are presented. Apparently the respondent concedes that the issues raised here, although framed in a slightly different fashion, have been substantially presented to the state courts of Indiana within the meaning of Castille v. Peoples, --- U.S. ----, 109 S.Ct. 1056 (1989). The specific claims raised by the petitioner are:
 
 
 9
 1. There is insufficient evidence to support the petitioner's conviction of burglary;
 
 
 10
 2. Due process of law was violated when the prosecution was permitted to amend the burglary information to add the habitual offender count;
 
 
 11
 3. Due process of law was violated with reference to the adoption and reading of prosecution's tendered Instruction No. 3;
 
 
 12
 4. Due process of law was denied when a juror was excused and an alternate juror was substituted during deliberations of the bifurcated habitual offender proceedings; and
 
 
 13
 5. There is insufficient evidence to support the habitual offender finding.
 
 
 14
 Justice Shepard carefully and fully outlined the factual setting of this case as follows:
 
 
 15
 Dixon alleges that the State failed to produce sufficient evidence of probative value to support either the jury's guilty verdict on the burglary charge or the finding that Dixon was an habitual offender.
 
 
 16
 The evidence at trial showed that in the late afternoon of July 7, 1985, Mike Dixon offered money to two teenagers, Mishon Bradford and Stacey Irvin, as payment for entering a house, putting specified items in a bag and bringing the items to him while he waited nearby in his pickup truck. Dixon told the boys that someone had already broken into the house. The boys agreed, and Dixon drove them to James Jenkins' house.
 
 
 17
 Peter Anderson lived two houses down from James Jenkins. Anderson was napping when an unidentified man knocked on his door and told him that the house two doors down had been broken into. Thirty minutes to an hour later Anderson went outside to investigate. Anderson saw a black man, later identified as Mishon Bradford, exit Jenkins' house with a black bag and run away. Bradford ran toward a pickup truck occupied by Dixon. The truck was parked in an alley but still visible to Anderson. Anderson stopped a third man, later identified as Stacey Irvin, as he exited through Jenkins' front door. Anderson knew Jenkins was not at home. Anderson instructed Irvin to call the first man back. Irvin yelled, "Mike! Mike! Mike!" But Dixon and Bradford drove off in the truck, leaving Irvin to face Anderson and, presently, the police.
 
 
 18
 When Jenkins returned to his home, he found missing some thirty cassette tapes, a tape deck, a radio receiver and a VCR. The front door had been broken open by a rock smashed through the glass. The glass had not been broken when Jenkins left home earlier in the day and the door had been locked. The missing items were later recovered in the alley in a black plastic garbage bag. Two days later, police arrested Michael Dixon.
 
 
 19
 The evidence was sufficient to show beyond a reasonable doubt that Dixon knowingly or intentionally aided and induced Mishon Bradford and Stacey Irvin to break and enter the dwelling of James Jenkins with the intent to commit theft therein. This proof comprises all the essential elements of aiding and abetting burglary and is sufficient to support a conviction for burglary. See Ind.Code Sec. 35-41-2-4 (aiding or inducing); Sec. 35-43-2-1 (burglary).
 
 
 20
 Dixon further argues that the evidence is insufficient to support the habitual offender finding because the certified copies of the order book entry pertaining to a prior conviction reflect that the offense was committed on October 21, 1980, and that the trial and conviction occurred on June 12, 1980. The fact that the order book entry containing the June 12, 1980, date was file marked June 12, 1981 and certified by the clerk on June 12, 1981, creates the inference that the entry was incorrectly dated 1980 and that the true date is 1981. Evidence that Dixon was convicted of a felony on June 12, 1981, and a felony on May 15, 1974, is sufficient to support a finding that Dixon is an habitual offender.
 
 
 21
 Dixon, 524 N.E.2d at 4-5.
 
 II.
 
 22
 The petitioner argues that there was insufficient evidence to support his conviction for burglary and to support the habitual offender finding. Justice Stewart, speaking for the Supreme Court of the United States in Jackson v. Virginia, 443 U.S. 307 (1979), stated:
 
 
 23
 A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in Sec. 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. Sec. 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur--reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right--is not one that can be so lightly abjured.
 
 
 24
 Id. at 323. The Supreme Court in Jackson held:
 
 
 25
 We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. Sec. 2254--if the settled procedural prerequisites for such a claim have otherwise been satisfied--the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.
 
 
 26
 Id. at 324 (footnote omitted).
 
 
 27
 A review of the record in the light most favorable to the prosecution convinces the court that a rational trier of fact could readily have found the petitioner guilty beyond a reasonable doubt of burglary and of being an habitual offender. As outlined by the Supreme Court of Indiana, there is more than enough evidence to demonstrate this petitioner's guilt of the offense of burglary. The evidence clearly establishes that the petitioner hired Irvin and Bradford to break into and remove items from Jenkins' residence.
 
 
 28
 The evidence also indicates that the petitioner has been convicted of two prior felonies and therefore is an habitual offender. The court is well aware of the decision by the Court of Appeals in Williams v. Duckworth, 738 F.2d 828 (7th Cir.1984), cert. denied, 469 U.S. 1229 (1985). However, unlike Williams, there exists sufficient evidence that the petitioner was convicted and sentenced for felony first degree burglary in 1974. Tr.Rec. at 641 (State's Exhibit 4--Docket sheet entries). There also exists sufficient evidence that the petitioner was convicted and sentenced for felony robbery in 1981. Tr.Rec. at 646 (State's Exhibit 5--Order of state trial court indicating date of conviction and sentencing[1] ). The court does not conceive that the decision in Williams in any way constitutionally undermines the habitual offender finding in this case. The court therefore concludes that a rational jury could have found beyond a reasonable doubt that the petitioner was guilty of burglary and was an habitual offender.
 
 
 29
 The petitioner also contends that his due process rights were violated when the prosecution amended the charging information to add the habitual offender charge. The state court record reflects that the petitioner's case was originally set for trial on January 9, 1986. That trial setting was later rescheduled to January 30, 1986. On January 23, 1986, an amended information was filed alleging that the petitioner was an habitual offender under Ind.Code Ann. Sec. 35-50-2-8 (West 1986). Thereafter, the petitioner, by counsel, alleged that he had insufficient time to prepare for trial. Upon petitioner's motion for a continuance, the trial was continued to and commenced on March 5, 1986.
 
 
 30
 The petitioner now claims that this amendatory process violated the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States. The petitioner and his counsel had from January 23, 1986, to March 5, 1986, to prepare to defend the newly filed habitual offender charge. The petitioner is hardpressed to assert any actual prejudice with regard to the adding of the habitual offender charge and the court finds none.
 
 
 31
 The petitioner also raises a due process argument with respect to the prosecution's tendered Instruction No. 3, which was given by the state trial court. That instruction states:
 
 
 32
 A person who knowingly or intentionally aids, induces, or causes another person to commit an offense, commits that offense and is subject to the same penalties as the person he knowingly or intentionally aided, induced, or caused to commit the offense.
 
 
 33
 Tr.Rec. at 115. The petitioner argues that the burglary charge made no reference to an accomplice theory. He therefore argues that the instruction was improper. Obviously, he must argue that such an instruction violates the Constitution of the United States since collateral review under 28 U.S.C. Sec. 2254 focuses on federal constitutional violations. See Bell v. Duckworth, 861 F.2d 169, 170 (7th Cir.1988), cert. denied, 109 S.Ct. 1552 (1989).
 
 
 34
 As a general proposition, the sufficiency of a criminal charge, whether it be by indictment or information, is not the proper subject for federal habeas review. This was decided by the Supreme Court of the United States more than sixty years ago in Knewel v. Egan, 268 U.S. 442 (1925), and has been subsequently reaffirmed in this circuit in United States ex rel. Ballard v. Bengston, 702 F.2d 656 (7th Cir.1983), and Cramer v. Fahner, 683 F.2d 1376 (7th Cir.1982), cert. denied, 459 U.S. 1016 (1982).
 
 
 35
 Chief Justice Shepard's well crafted opinion deals specifically with this issue under the substantive law of Indiana. See Dixon, 524 N.E.2d at 5. The elements of aiding and abetting are not required to be specifically charged. The basic requirement is that there be evidence to support the concept of aiding and abetting before the state trial court is authorized to give such an instruction. See Richey v. State, 426 N.E.2d 389 (Ind.1981). Here, there was evidence of aiding and abetting to support the giving of such an instruction.
 
 
 36
 The petitioner lastly argues that his due process rights were violated when the state trial court replaced a juror with an alternate juror in the middle of jury deliberations during the habitual offender proceedings. During those deliberations, the state trial judge responsible for this case received a note from the jury that one juror refused to participate in the deliberations. The state trial judge handled the matter very carefully as he must. The jury returned to open court and the juror in question was interviewed by the judge. That juror stated that she did not want to make a decision on this part of the proceeding and refused to participate. She then was excused and replaced by an alternate juror. Tr.Rec. at 649-657. Defense counsel raised a continuing objection to the substitution procedure. Thereafter, the jury returned a verdict finding the petitioner to be an habitual offender. The habitual offender deliberations began and ended in one day.
 
 
 37
 Chief Justice Shepard ruled that the substitution procedure did not violate Indiana law. Dixon, 524 N.E.2d at 4. This court must now determine whether this procedure passes constitutional muster. The Seventh Circuit has held that the federal constitution does not proscribe the substitution of an alternate juror after deliberations have begun. Henderson v. Lane, 613 F.2d 175, 179 (7th Cir.1980), cert. denied, 446 U.S. 986 (1980). See also United States v. Hillard, 701 F.2d 1052, 1056-57 (2d Cir.1983), cert. denied, 461 U.S. 958 (1983); United States v. Phillips, 664 F.2d 971, 992-93 (5th Cir.1981), cert. denied, 459 U.S. 906 (1982).
 
 
 38
 In Henderson, the habeas petitioner, Henderson, was tried before a state jury of twelve regular and two alternate jurors. At the conclusion of the jury instructions, the two alternate jurors were discharged and the other jurors retired for deliberations. After two and one-half hours of deliberation, one of the regular jurors suffered a heart attack. After stopping deliberations, the state trial court recalled the two alternate jurors. The court questioned the alternate jurors about their activities during their discharge. The first alternate admitted talking to his wife about the case, but stated that his wife expressed no opinion. Both alternate jurors assured the court that they had reached no decision regarding Henderson's guilt or innocence. The court then conferred with counsel. Defense counsel refused to stipulate to a eleven member jury. The state trial court then recalled the first alternate juror. A guilt verdict was returned five hours later.
 
 
 39
 On habeas appeal, the Seventh Circuit first observed:
 
 
 40
 In determining the constitutionality of the substitution procedure, we must consider whether the procedure preserves the "essential feature" of the jury, defined by the Supreme Court as
 
 
 41
 the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence.
 
 
 42
 Williams v. Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1970).
 
 
 43
 Henderson, 613 F.2d at 177. The Seventh Circuit first observed that Henderson was relying on federal cases holding that the substitution of jurors after the commencement of deliberations violates Rule 24(c) of the Federal Rules of Criminal Procedure (although the Constitution does not proscribe such a procedure). Henderson, 613 F.2d at 177-78. The court then found that Henderson failed to show any irregularities in the initial selection of the alternate juror, that is, the the alternates were subject to the same procedures as the regular jurors. Id. at 178. The court noted that the alternate heard the evidence and was instructed on the law with the regular jurors. Id. The court also noted that defense counsel was allowed to examine the alternate with respect to the alternate's activities after dismissal and with respect to the possibility that the alternate had formed an opinion about guilt or innocence during that time. Id. The court then concluded that the essential features of the jury were preserved and that the constitution was not violated. Id. at 179
 
 
 44
 Here, the regular juror refused to participate in the habitual offender deliberations by refusing to find for or against the petitioner. The regular juror unequivocally told the state trial judge that she wanted no part in deciding whether or not the petitioner was an habitual offender. Unlike an illness, the trial court could not continue the case until the regular juror was healthy. The court had no choice but to continue with eleven jurors or use the alternate.
 
 
 45
 The state court record indicates that the alternate had been questioned during voir doir and was sworn in as a juror. Tr.Rec. at 375-84. She participated throughout the proceedings with the exception of the deliberations. Tr.Rec. at 657. The alternate was sequestered from the regular jurors during their deliberations and had no contact with the public. Tr.Rec. at 658. When the alternate was substituted, the state trial court instructed the reconstituted jury to begin their deliberations anew and admonished them not consider the events as any indication of the petitioner's guilt or innocence. Tr.Rec. at 660. This court also notes that throughout the substitution procedure, defense counsel was given the opportunity to object.
 
 
 46
 The court concludes that the "essential features" of the jury were preserved in this case. In Henderson, the Seventh Circuit found that the essential features of that jury were preserved even though the alternate had been discharged, went home, and then discussed the case with his wife. Here, unlike Henderson, the alternate was not discharged. It appears from the state court record that the alternate remained sequestered from the public at the courthouse during the jury deliberations. Under such circumstances, the substitution of the alternate juror could not have contaminated the jury deliberations. The petitioner has simply failed to demonstrate how the substitution procedure violated his constitutional rights.
 
 
 47
 Accordingly, the court finds that there is no basis for granting a writ under 28 U.S.C. Sec. 2254 and, therefore, the petition is respectfully DENIED. IT IS SO ORDERED.
 
 
 48
 /s/Allen Sharpe
 
 
 49
 /s/ CHIEF JUDGE
 
 NORTHERN DISTRICT OF INDIANA
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and the record
 
 
 [1]
 The state trial court's order is dated June 12, 1980. The petitioner committed the robbery on October 21, 1980. The order, nevertheless, was file marked June 12, 1981, and was certified by the clerk of the court on June 12, 1981. These later dates create an inference that the date on the order is merely a typographical error and that the petitioner did indeed plead guilty and was sentenced on June 12, 1981, and not on June 12, 1980