Sterling **RIGGS**, Appellant (Defendant below),

v.

**STATE** of Indiana, Appellee (Plaintiff below).

No. 49S02–0406–CR–246.

Supreme Court of Indiana.

June 3, 2004.

Timothy J. O'Connor, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

The removal of a juror after deliberations have begun requires a record establishing that the deliberations of the other jurors were not prejudiced by the removal and that cause existed for removal without depriving the defendant of his right to a jury trial. In this case a juror was removed without establishing the need to do so, and without taking precautions to prevent the rest of the jury from being improperly influenced. We remand this case for a new trial.

### Factual and Procedural Background

In 1985, fifteen-year-old T.P. was an eighth grader attending school in Indianapolis. T.P. left her aunt's home on April 7, Easter Sunday morning, saying she would be back to go to church. She never returned, and a week later her body was found floating in Fall Creek. An autopsy determined that T.P. had drowned, and been in the water approximately forty-eight hours or slightly longer. T.P. was naked, and bound by articles of clothing around her ankles, neck and wrists. Both vaginal and rectal swabs revealed spermatozoa.

No suspects emerged in 1985, and the investigation was dormant until 2000, when the lead detective initiated a comparison of DNA samples from T.P.'s body with a statewide DNA database. A match was found with a sample from Sterling Riggs, who had lived behind T.P.'s aunt at the time of T.P.'s death. The State charged Riggs with murder, felony murder, Class A criminal deviate conduct, and rape. The trial occurred in October 2001, and the jury found the defendant guilty of murder and criminal deviate conduct, but not guilty of rape and felony murder. Riggs was sentenced to consecutive sentences of sixty-five years for murder and fifty years for criminal deviate conduct. The Court of Appeals, in an unpublished memorandum decision, affirmed the convictions for murder and criminal deviate conduct but reduced the latter to a Class B felony. Riggs seeks transfer.

Riggs contends that: 1) the trial court erred when it replaced a sitting juror, 2) the evidence is insufficient to support the murder conviction, 3) the evidence is insufficient to support the criminal deviate conduct conviction, 4) the convictions violate Indiana's Double Jeopardy Clause, and 5) a sentence of sixty-five years for a murder committed in 1985 is erroneous. We now grant transfer and summarily affirm the Court of Appeals as to issues 2, 3, 4, and 5. Ind. Appellate Rule 58(A)(2).

### Replacing a Juror After Deliberations Begin

Approximately four hours after the jury began deliberating the trial court received a note from the foreman. After consulting with counsel for both Riggs and the State, the trial court engaged in the following dialogue with the foreman outside the presence of the other jurors:

THE COURT: Okay. I've received a note from you that indicates "We have a juror that's become belligerent, not willing to discuss the issues onhand [sic] pertaining to the case. Do we have any recourse?" Is that your note to me?

FOREMAN: Yes, it is.

THE COURT: Okay. I have to be—I can only ask you very limited questions, so I'm going to be very careful at this point and then I'll excuse you and you can go back to the jury room. Would you be kind enough in our discussion not to identify the person or their sex? Also would you be kind enough not to disclose the state of the deliberations of the jury, what the vote is, anything of that nature, or the leanings of this juror, okay, sir?

FOREMAN: Yes, sir.

THE COURT: I appreciate it. Has this person, male or female, participated in any deliberations at all?

FOREMAN: Marginally.

THE COURT: Marginally?

FOREMAN: Very marginally.

THE COURT: Okay. So my understanding is that we sent you back to deliberate at 1:40 today and it is now 6:15 . . .

FOREMAN: Uh-huh.

THE COURT: ... when you say "belligerent" are there—is there any physical conduct going on ...

FOREMAN: No.

THE COURT: ... in the jury room?

FOREMAN: No, it didn't get to that point.

THE COURT: Okay. Is it likely to get to that point or ...

FOREMAN: I felt that it was, that's ...

THE COURT: Okay.

FOREMAN: ... why I went and stood by the individual.

THE COURT: Okay. Do you think—and this is kind of tentatively to help me understand—has this person—in your opinion as the foreperson of the jury, has this person fairly participated in the deliberations this far?

FOREMAN: Yes.

THE COURT: All right. So if this person has fairly participated in deliberations is it just that the person has reached an opinion and refuses now to budge from that?

FOREMAN: That's correct.

After the judge excused the foreman, Riggs's attorney requested that the court ask the foreman if he believed further deliberations would yield a unanimous verdict. If the answer was no, Riggs asked that the court declare a hung jury and grant a mistrial. The State responded by asking for removal of the juror who was the subject of the foreman's concern. The trial court recalled the foreman and the following occurred:

THE COURT: Have a seat again. Has—when was the last time there's been any deliberations, it's now six—you came in at 6:15, did there come a point where deliberations stopped altogether?

FOREMAN: It pretty much stopped at five o'clock.

THE COURT: At five o'clock. And if—had they continued, would there have been violence?

FOREMAN: I would think so. But beginning, that's why I wasn't sure how to handle it.

THE COURT: Is there—is the conduct of this juror such as to cause fear to other jurors?

FOREMAN: Yes. Fear of violence? Yeah.

THE COURT: All jurors have to be able to deliberate without fear to their person and what I'm concerned about, is there—is that attitude or atmosphere in the jury room?

FOREMAN: I don't think any of the jurors are physically fearing, fearing that juror, I mean most of the jurors are not willing to work with that juror because of the way they feel. As well as it goes the other way.

THE COURT: Pardon me?

FOREMAN: As well as the jurors not wanting to have ...

THE COURT: Not willing to work with the other ...

FOREMAN: ... work with anybody else in that room.

RIGGS'S ATTORNEY: I'm sorry, I didn't hear that answer.

FOREMAN: That particular juror is not willing to work with any of the other jurors to talk out the various different charges.

The State then reiterated its request that the juror be replaced, and Riggs responded that the record was not sufficiently clear to warrant the removal of a juror. After a brief recess, the trial judge was handed a note from the jury foreman asking for the court to "... please bring us the official statute regarding ... criminal deviate conduct. Thanks." The jury was

informed that the "official statute" was contained in the instructions and the court directed that deliberations continue. The State had no problem with the trial court's response, but Riggs's attorney expressed concern that the jury had continued deliberating, "without the juror who caused the problem." We assume, but are not certain, that this was based on the foreman's reports that little progress had been made since 5:00 p.m., and the assumption that the still unnamed juror, though present, was not engaged in the deliberations.

Sometime between 6:15 and 7:30 the foreman sent the following note to the trial court, "The juror, Marcus Wallace, needs to see the Judge, ASAP." The parties agreed that the court should interview Wallace and the following examination took place:

THE COURT: I got a note from the jury foreman that says you need to see me.

WALLACE: Yes, sir.

THE COURT: Okay. Why do you need to see me?

WALLACE: I've been accusing [sic] of trying to defend the defendant by the head juror. Not—I'm not going to take that. The head juror accused me of trying to defend the defendant and I'm not going to take that.

THE COURT: What do you mean "you're not going to take that"?

WALLACE: I don't have to because I'm trying to give a fair and impartial determination to this evidence and to this Court.

THE COURT: Well what do you intend to do about that?

WALLACE: I just asked to see the Judge. I want to see what statute you want me to do. I asked to see the Judge.

THE COURT: Okay. Thank you, sir, would you step outside the door with the bailiff . . .

WALLACE: Yes, sir.

THE COURT: . . . for just a minute?

The State then reiterated its desire to have Wallace replaced by an alternate, and Riggs disagreed, arguing the juror should continue and failure to do so would be a violation of Riggs's constitutional right to a unanimous jury verdict. The trial court denied the defense's request to poll the jury as to whether they could reach a verdict. The trial court then made the following statement: "First of all the Court did in fact observe the demeanor of the juror and listened to his words to the point that the Court is troubled if it sends this juror back to deliberate . . . I am fearful of the events that would occur back there. . . . The Court will also . . . allow any party to examine the witnesses . . . including the baliff . . . [that] delivered this note and appeared to be in somewhat of a panic, that they were screaming at each other." At 7:30 p.m. court reconvened and the judge dismissed the juror.

The trial court then reconvened the jury and told them it had released Wallace from the panel. It then placed an alternate juror on the jury. It then asked each juror, in the presence of the others, if the removal of the juror would interfere with their ability to render "a fair and impartial verdict," to which each responded "no." At 10:25 p.m. the jury reported it had reached a verdict. After Riggs unsuccessfully moved for a mistrial, the jury reported its verdict of guilty as to the murder and criminal deviate conduct charge, and not guilty on the felony murder and rape charges.

Riggs contends that removing Wallace violated his constitutional right to an impartial jury, and further argues that the record in this case does not support cause

to remove the juror. Riggs notes the lack of clarity as to facts apparently relied on by the trial court. For example, the record shows that deputies reported screaming in the jury room, but does not say who screamed, what they were screaming, or to whom the screaming was directed. Without these facts, Riggs contends the trial court did not have enough information to warrant removal of the juror. Riggs also notes the foreman's ultimate conclusion that he did not believe other jurors were in fear of Wallace.

In affirming the trial court, the Court of Appeals relied on Indiana Trial Rule 47(B), which allows an alternate to replace jurors who "prior to the time the jury returns its verdict, become or are found to be disqualified to perform their duties." The Court of Appeals reviewed the replacement of Wallace under an abuse of discretion standard, and affirmed. We hold that this record is not sufficient to support removal of a juror after deliberations have begun.

### A. Standard of Review

■ The State points to cases holding that trial courts have broad discretion in determining whether to replace a juror with an alternate. Specifically, a number of cases have given trial courts significant leeway under Indiana Trial Rule 47(B) in determining whether to replace a juror with an alternate, and reverse only for an abuse of discretion. See Jervis v. State, 679 N.E.2d 875, 881 (Ind.1997). These cases deal with removal of a prospective juror from a panel, or removal as a result of developments during the trial. They do not address removal of a seated juror after deliberations have begun based on conduct in the jury room. For example in Harris v. State, 659 N.E.2d 522, 525 (Ind.1995), after the first witness took the stand a juror realized that the previous weekend the witness's brother, who worked at a

service station and was also expected to testify, had driven the juror home after servicing the juror's car. The two had exchanged pleasantries but nothing related to the case. The trial court's ruling that this incidental contact with an expected witness was not a ground to remove the juror was within the trial court's discretion. Id. at 526. The ground for removal did not present any substantiated basis to assume bias on the part of the juror. The trial court's assessment of the effect of such innocuous contact is entitled to significant deference because it is based in large part on an assessment of the juror's ability to evaluate the case on its merits. Although a trial court has broad discretion to remove a juror before deliberations begin, removing a dissenting juror after that point implicates the defendant's right to a unanimous verdict and the defendant's right to a jury trial. Shotikare v. United States, 779 A.2d 335, 344 (D.C.2001). Removal of a juror after deliberations have begun is ultimately a matter requiring deference to the trial court's judgment, but it raises a number of considerations not present before deliberations begin. As a result, it demands a carefully developed record as to the grounds for removal and also requires precautions to avoid inappropriate consequences from the removal.

### B. Grounds for Removal after Deliberations Begin

■ Typical grounds for discharge of a juror are bias due to exposure to publicity or contact with a party or witness. Wallace was not removed for bias on these or other grounds. Rather, removal was based on Wallace's actions in the course of deliberations. Once deliberations begin, discharge of a juror is warranted only in the most extreme situations where it can be shown that the removal of the juror is necessary for the integrity of the process, does not prejudice the deliberations of the

rest of the panel, and does not impair the parties right to a trial by jury. Indeed, some jurisdictions hold that a mistrial is required if discharge occurs after deliberations begin. *See State v. Adams,* 320 N.J.Super. 360, 727 A.2d 468, 471 (1999).

Here the actions leading to the dismissal arose from the deliberations, and the record does not establish that Wallace's conduct was improperly influencing the rest of the panel. A failure to agree, however unreasonable, is a ground for mistrial, not removal of the obstacle to unanimity. *See United States v. Hernandez,* 862 F.2d 17, 23 (2d Cir.1988) ("That a juror may not be removed because he or she disagrees with the other jurors as to the merits of a case requires no citation."). Removal of a juror for misconduct requires more than a refusal to negotiate further. If there were a showing of physical confrontation, or attempts to intimidate other jurors, then removal may be permissible. *Shotikare,* 779 A.2d at 340, 345. But this record does not establish these extreme modes of conduct.

It appears that the effect of the juror's dismissal may well have been the avoidance of a hung jury. Of course trial judges do and should seek to avoid a hung jury. We have often expressed the view that a mistrial is an extreme remedy, warranted only if less severe situations will not address the problem. *West v. State,* 758 N.E.2d 54, 55 (Ind.2001). The trial judge may guide, encourage and instruct to correct problems in jury deliberations. This policy in favor of assisting a jury in reaching a verdict is also reflected in Jury Rule 28. But it does not permit removal of a juror simply because the juror does not agree.

The Court of Appeals dealt with similar facts in *Gavin v. State,* 671 N.E.2d 440 (Ind.Ct.App.1996). In *Gavin,* the trial judge removed a juror, even though the juror stated he based his beliefs on the evidence and had made up his mind during the trial. Noting that a trial court has broad discretion in replacing a juror, the Court of Appeals held that this discretion is abused when a trial court removes an impartial juror who has voted to acquit based upon the evidence presented at trial. *Id.* at 447. Here the decision to remove Wallace was based on the trial court's expressed concern for his effect on other members of the jury. But the potential for violence is at best unclear. What is clear is that the removal of the juror had the effect of removing a pro-defense juror who, after the jury had deliberated, appeared likely to create a hung jury. Importantly, as in *Gavin,* the juror represented that he was trying to fulfill his role as a juror and was making a decision based on the evidence. The foreman's accounts of Wallace's behavior amount to rudeness and intransigence but there is no record establishing physical threats, intimidation or other conduct justifying removal. Accordingly, as in *Gavin,* removal was improper.

## C. *Procedure for Removal after Deliberations Begin*

The State contends that Riggs did not develop a record establishing prejudice to him from the removal. We agree a thorough record is necessary to establish grounds for removal. But it is not up to the parties to show prejudice as to the outcome. Unjustified removal is structural error, just as much as denial of the right to an impartial jury. As the United States Supreme Court put it in *Gray v. Mississippi,* 481 U.S. 648, 668, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987), "some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error. The right to an impartial adjudicator, be it judge or jury, is such a

right." Moreover, to establish that the right is not infringed, the trial court must establish the record to support removal of a deliberating juror, just as a record is required to establish bias of a prospective juror. *Lindsey v. State,* 260 Ind. 351, 357–59, 295 N.E.2d 819, 823–24 (1973).

 Finally, it is important to note that removal of a deliberating juror raises several issues not present in striking a juror in voir dire. Steps may also be required in addition to establishing the grounds for removal. The inquiry into the need to remove a juror may result in the juror's continuing to serve on the panel, so the trial court must avoid questioning that may affect the juror's judgment. *See Commonwealth v. Connor,* 392 Mass. 838, 467 N.E.2d 1340, 1346 (1984). Moreover, the trial court must be careful not to convey improper messages, either verbal or silent, to the other jurors, who may infer that the juror was dismissed because of his or her view of the case. *Id.* Here, the trial court judge asked each juror, in the presence of the full jury, whether the removal of the juror would "in some way interfere" with the juror's "ability to reach a fair and impartial verdict," to which each responded "no." This general inquiry did not focus sufficiently on the problem of the potential effect of the removal on the jury. A juror might well conclude that the removal of Wallace implied disagreement with Wallace's views on the merits of the case. Removal should be accompanied by an instruction that removal in no way reflected approval or disapproval of the views expressed by the juror.

### Conclusion

In sum, the record does not establish grounds for replacement of Wallace. There was no interview of Wallace regarding the alleged threats, and no interview of other jurors to establish fear of violence.

In addition, no steps were taken to minimize the effect of removal on remaining jurors. For both of these reasons the judgment of the trial court is vacated and this case is remanded for a new trial.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.