**Carl SPEARS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 32A05–0310–CR–512.**

Court of Appeals of Indiana.

July 13, 2004.

Paula M. Sauer, Danville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Carl Spears (Spears), appeals his conviction for Count II, pointing a firearm, a Class D felony, Ind.Code § 35–47–4–3.

We affirm.

## ISSUES

Spears raises two issues on appeal, which we restate as follows:

1. Whether the trial court committed fundamental error when, after learning of a witness' extra-judicial contact with a juror concerning an issue before the court, it failed to replace the juror; and

2. Whether the trial court abused its discretion by imposing the maximum sentence in light of the nature of the offense and character of the offender.

## FACTS AND PROCEDURAL HISTORY

In March and early April of 2003, Spears lived with Franklyn Monje (Monje) and his family in Monje's trailer at Maplegrove Trailer Park, in Plainfield, Indiana. While living there, Spears, in exchange for his lodging, would babysit Monje's daughter a couple of times a week. After three weeks, Spears moved out and started living with Dwight Forsyth (Forsyth) in Forsyth's trailer. On the evening of April 11, 2003, Spears, Forsyth, and Herman Edwards (Edwards) were drinking and watching television in Forsyth's trailer. Shortly before 9:00 p.m. that evening, Monje was working on his car and needed a part for his exhaust system. Because his daughter was asleep in the trailer, Monje went over to Forsyth's trailer and requested Spears to watch his daughter while he quickly drove to the auto parts store. Spears declined, and his refusal angered Monje who cursed Spears. However, Edwards agreed to watch Monje's daughter until he returned from the store.

Upon coming back from the auto parts store, Monje returned Forsyth's keys to his pickup truck which he borrowed to drive to the store. As Monje tried to leave Forsyth's trailer, Spears asked him what he had commented before going to the store. Monje replied that he had said "fuck that" because Spears refused to ba-

bysit his daughter. (Transcript p. 141). Spears argued that Monje had called him a "mother fucker," which was denied by Monje who refused to further address the argument. (Tr. p. 141). While Monje turned to leave the trailer, Spears grabbed his arm. Monje spun around and hit Spears on the head with the auto part he had previously purchased. The ensuing struggle between Spears and Monje was immediately broken up by Forsyth and Edwards. Monje returned to his trailer and resumed working on his car. After Monje left Forsyth's trailer, Forsyth and Edwards tried to stop the bleeding from Spears' head wound.

Upon stopping the bleeding, Spears obtained Forsyth's loaded .45caliber automatic pistol. Spears walked over to Monje's trailer and pointed the gun at him. Monje ran to his landlord's nearby trailer, yelling that Spears had a gun and was trying to shoot him. The landlord called 9–1–1.

Three days later, on April 14, 2003, the State filed an information, charging Spears with Count I, criminal recklessness with a deadly weapon, a Class D felony, I.C. § 35–42–2–2(b)(2) and Count II, pointing a firearm, a Class D felony, I.C. § 35–47–4–3. On June 19, 2003, the trial court granted the State's Motion to Dismiss Count I. On June 24, 2003, a jury trial was held. That same day, the jury found Spears guilty as charged. Subsequently, on August 14, 2003, the trial court conducted a sentencing hearing. At the hearing, Spears was sentenced to 3 years at the Indiana Department of Correction.

Spears now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Juror's Extra–Judicial Contact with Witness During Trial

Spears first contends that the trial court committed fundamental error when it

failed to replace a juror. Specifically, Spears asserts that a witness' conversation with a juror during a recess regarding an issue before the court resulted in substantial prejudice as to make a fair trial impossible. Conversely, the State claims that Spears waived the issue because he never objected to the juror remaining a member of the jury or moved for a mistrial.

### A. *Standard of Review*

In its very recent decision of *Riggs v. State*, 809 N.E.2d 322 (Ind. 2004), our supreme court appears to subtly change the standard of review with regard to removal of jurors depending on when the out-of-court communication with a witness occurs. *Id.*, 809 N.E.2d at 326–27. Traditionally, we have awarded trial courts significant discretion whether to replace a juror with an alternate, and we reverse only for an abuse of discretion. *See Jervis v. State*, 679 N.E.2d 875, 881 (Ind.1997). The trial court's decision to remove a prospective juror from a panel or as a result of developments during trial is entitled to substantial deference because it is based in large part on an assessment of the juror's ability to evaluate the case on its merits. *See Riggs*, 809 N.E.2d at 326–27.

However, our supreme court in *Riggs* concluded that, although a trial court has broad discretion to remove a juror before deliberations begin, removing a dissenting juror after that point implicates the defendant's right to a unanimous verdict and the defendant's right to a jury trial. *Id.* Therefore, the supreme court held that, even though removal of a juror after deliberations have begun is still ultimately a matter requiring deference to the trial court's judgment, it nevertheless raises an additional number of considerations not present before deliberations begin. *Id.* As a result, it demands a carefully developed record as to the grounds for removal and also requires precautions to avoid inappro-priate consequences from removal. *Id.* Thus, our supreme court found that once deliberations begin, discharge of a juror is warranted only in the most extreme situations where it can be shown that removal of the juror is necessary for the integrity of the process, does not prejudice the deliberations of the rest of the panel, and does not impair the parties right to a trial by jury. *Id.*

In the present case, the incident leading to a possible dismissal of the juror occurred during a recess in the trial, prior to deliberations. Accordingly, we will review the trial court's decision using our traditional standard of review, reversing only for an abuse of discretion. *See Jervis*, 679 N.E.2d at 881.

### B. *Analysis*

It is well established that because of the fundamental nature a jury plays in our system of justice, a rebuttable presumption of prejudice arises where a juror has been involved in out-of-court communications. *Timm v. State*, 644 N.E.2d 1235, 1237 (Ind.1994). Such misconduct generally must be based upon proof, by preponderance of the evidence, that an extra-judicial contact or communication occurred and that it pertained to a matter pending before the jury. *Kelley v. State*, 555 N.E.2d 140, 141 (Ind.1990). In the instant case, Spears argues that an out-of-court remark regarding lying witnesses made by Spears' witness to the juror was prejudicial to Spears.

Our review of the record shows that Spears never objected to the juror remaining on the jury, nor did he move for a mistrial. Generally, a contemporaneous objection is required to preserve an issue for appeal. *See Anderson v. State*, 653 N.E.2d 1048, 1051 (Ind.Ct.App.1995). Seeking to avoid procedural default, Spears urges that his claim is not foreclos-

ed because the trial court's failure to dismiss the juror constituted fundamental error. However, we acknowledge that the fundamental error doctrine is extremely narrow. To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Willey v. State,* 712 N.E.2d 434, 444–45 (Ind.1999). To be fundamental error, the error must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Wilson v. State,* 514 N.E.2d 282, 284 (Ind. 1987).

Here, the juror immediately notified the trial court that Edwards, Spears' witness, had approached him, and the following colloquy occurred:

[COURT]: Okay, we're on the record outside the presence of the jurors, except for [the juror]. It's come to the court's attention that a witness may have had a conversation, not at [the juror's] request, with him. I need to inquire of you about that. So, if you'd raise your right hand. Do you swear or affirm under penalties for perjury, the testimony you're about to give in this case will be the truth?

[JUROR]: I do.

\* \* \*

[COURT]: And you were just outside during the break, is that right?

[JUROR]: Yes, Sir.

[COURT]: And did [Edwards] come up to you?

[JUROR]: Uh ... yes. I was [sitting] outside, I asked the bailiff if I could go outside and have a cigarette, how long of a break we'd be having, she said about ten or fifteen minutes. I walked down the stairs, exited out the East doors towards Frank's. I wanted to walk out-

side in the sunshine. I sat down on the concrete pad outside there and [Edwards] was on the telephone as I walked out the door. Just nodded and I nodded back, walked out and [sat] outside. He walked by me, I was [sitting] there, he walked up beside me and said that uh ... I know I'm not supposed to talk to you and I said responding something to the nature of, no, you're not and he said, I have to know or you have to know that they are lying and I said, I don't want to hear it and I said I can't talk to you about it and he proceeded and kept walking. Didn't actually, per se, stop and try to talk to me he just said this as he kept walking down the steps. I walked back up toward the front door, Judge Boles was coming up the sidewalk and asked him in passing, just a hi, how are you doing, I'm not sure and he continued on down the sidewalk and headed toward the town here toward the stop light and crossed the street.

(Tr. pp. 185–86). Continued questioning by the trial court elicited an unequivocal assurance from the juror that he could remain impartial and follow the trial court's instructions to deliberate. He further stated that he had not disclosed the encounter to the other jurors, or that any other jurors were present during the incident. The record reflects that the juror was subsequently elected to serve as the foreman.

In *McCants v. State,* 686 N.E.2d 1281, 1285 (Ind.1997), our supreme court acknowledged that the timely disclosure of a juror's casual relationship with a witness or a party, coupled with an assertion that the juror will remain impartial, adequately protects a defendant's right to an impartial jury. Based on the evidence before us, it is clear that the out-of-court contact between the juror and Edwards pertained to the credibility of the State's witnesses, an

issue squarely pending before the jury. Nonetheless, the juror immediately notified the court and fully explained the nature and content of the contact to the satisfaction of both parties.

Furthermore, we are not persuaded that the contact between Edwards and the juror even amounted to a "casual relationship." *See id.* The record reflects that Edwards and the juror had no prior acquaintance; they first met during Spears' trial. Moreover, the encounter occurred outside the courthouse where Edwards' remark was clearly made in passing. The juror, having been admonished by the trial court before the recess, emphatically refused to talk or listen to Edwards. Thus, unlike previous case law, there clearly was not even a relationship here, let alone, a conversation between two people. *See, e.g., Kelley,* 555 N.E.2d at 141 (where the State's only witness socialized with the jury during the lunch break of the one day trial); *Woods v. State,* 233 Ind. 320, 119 N.E.2d 558, 560 (1954) (where police officers visited with the jury during recess).

Therefore, we conclude that Spears did not prove that he was prejudiced by the trial court's refusal to replace the juror after his encounter with Edwards. Upon questioning the juror, the trial court was fully satisfied that the threat of prejudice was non-existent. Since the trial court is in the best position to assess the juror's honesty, integrity and his ability to perform as an impartial juror, we refuse to disturb its decision. Consequently, we reject Spears' argument that he was substantially prejudiced as to amount to fundamental error. *See Wilson,* 514 N.E.2d at 284.

## II. *Inappropriate Sentence*

■ Next, Spears asserts that the maximum sentence of three years for pointing a firearm, a Class D felony, is inappropriate. Specifically, Spears' only point of contention is that in light of the nature of the offense and his character the imposition of the maximum sentence is not warranted, and therefore, he requests this court to reduce his sentence to two years executed at the Indiana Department of Correction.

■ At the outset, we note that sentencing decisions are within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion. *Powell v. State,* 751 N.E.2d 311, 314 (Ind. Ct.App.2001). The trial court's sentencing discretion includes the determination of whether to increase presumptive penalties. *Madden v. State,* 697 N.E.2d 964, 967 (Ind. Ct.App.1998), *trans. denied.* In doing so, the trial court determines which aggravating and mitigating circumstances to consider, and is solely responsible for determining the weight to accord to each of these factors. *Perry v. State,* 751 N.E.2d 306, 309 (Ind.Ct.App.2001). The sentencing statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating and mitigating; and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to determine that the aggravators outweigh the mitigators. *Powell,* 751 N.E.2d at 315. We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. *Id.* A sentence enhancement will be affirmed, if after due consideration of the trial court's decision, this court finds that the sentence was appropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *see also Rodriguez v. State,* 785 N.E.2d 1169, 1174 (Ind.Ct.App.2003), *trans. denied.*

In this case, Spears was convicted of pointing a firearm, a Class D felony. The

presumptive sentence for a Class D felony is one and one-half years, with not more than one and one-half years added for aggravating circumstances or not more than one year subtracted for mitigating circumstances. *See* I.C. § 35–50–2–7. Here, the trial court enhanced Spears to the maximum sentence of three years for his conviction.

■ As mentioned above, Spears only argument concerns the appropriateness of his sentence in light of the nature of the offense and character of the offender. *See* App. R. 7(B). In considering the nature of the offense, the maximum enhancement permitted by law should be reserved for the very worst offenses and offenders. *See Borton v. State*, 759 N.E.2d 641, 648 (Ind.Ct.App.2001). In support of his contention, Spears asserts that his sentence should be revised because, in comparison with similar cases previously decided, he was not the worst offender and did not commit the worst of crimes.

However, if we were to take this language literally we would reserve the maximum punishment for only the single most heinous offense. In order to determine whether an offense fits that description, we would be required to compare the facts of the case before us with either those of other cases that have been previously decided, or—more problematically—with hypothetical facts calculated to prove a "worst-case scenario" template against which the instant facts can be measured. If the latter were done, one could always envision a way in which the instant facts would be worse. In such case, the worst manifestation of any offense would be hypothetical, not real, and the maximum sentence would never be justified. *See Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct.App.2002). In *Buchanan v. State*, 767 N.E.2d 967, 974 (Ind.2002), our supreme court attempted to clarify the rule regarding the imposition of maximum sentences as follows: "[a]lthough maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But such classes encompass a considerable variety of offenses and offenders." Here, we reject Spears' contention.

The nature of the offense in the instant case can be discerned from the facts, the presentence investigation report, and the trial court's comments during the sentencing hearing. The record establishes that Spears pointed a loaded firearm at Monje over an argument as to whether or not to babysit Monje's child. Further, as the trial court pointed out, this is a crime against an individual in whose home Spears previously was a guest and whose friendship he subsequently violated.

■ In addition to reviewing the nature of the offense, we review the sentence to ensure that it is constitutionally proportionate to the character of the offender. *See Borton*, 759 N.E.2d at 648. Spears is a career criminal who shows no inclination to conform his behavior to the rules of society. The record reflects that Spears' life of crime began in 1968 and continued relatively uninterrupted up to the present case. Furthermore, he brandished a loaded firearm in violation of the established rule that convicted felons cannot have handguns. Also, several of his previous convictions concerned offenses against individuals. As the trial court pointed out, Spears committed the instant offense while on probation. Even though we acknowledge that Spears might have been provoked by Monje assaulting him over the head with the auto part, instead of calling the police, Spears chose to escalate the situation by obtaining a loaded handgun and confronting Monje.

As we previously mentioned, this court is mindful that the maximum sentence is

reserved for the worst offenders. *See Borton,* 759 N.E.2d at 648. Consequently, based on the before us facts, we conclude that Spears is among the worst offenders of pointing a firearm, a Class D felony and his crime is among the worst within that Class of offenses. *See Buchanan,* 767 N.E.2d at 974. Therefore, the trial court's imposition of the maximum sentence is not inappropriate in light of the nature of the offense and character of the offender. *See* App. R. 7(B); *see also Rodriguez,* 785 N.E.2d at 1174. Accordingly, we find that the trial court did not abuse its discretion. *See Powell,* 751 N.E.2d at 314.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not commit funda-mental error when, after learning of a witness' extra-judicial contact with a juror concerning an issue before the court, the juror was not replaced. Furthermore, we hold that the trial court did not abuse its discretion by imposing the maximum sentence in light of the nature of the offense and character of the offender.

Affirmed.

KIRSCH, C.J., and NAJAM, J., concur.