**Arthur D. SCOTT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–0404–CR–328.

Court of Appeals of Indiana.

June 14, 2005.

Anthony C. Lawrence, Anderson, for Appellant.

Stephen R. Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RATLIFF, Senior J.

### STATEMENT OF THE CASE

Defendant–Appellant Arthur D. Scott ("Appellant") appeals from his conviction after a jury trial of attempted battery by means of a deadly weapon, a Class C felony, Ind.Code § 35–42–2–1(A)(3). Appellant was found not guilty of intimidation, a Class D felony. Ind.Code § 35–45–2–1(A)(1). Appellant pleaded guilty to the status offense of being a habitual offender.

We reverse.

### ISSUE

Appellant presents one issue for our review: whether the trial court committed reversible error by removing a juror during deliberations.

### FACTS AND PROCEDURAL HISTORY

The facts relevant to the issue presented here are as follows. Appellant's jury trial for the instant offenses began on February 17, 2004. After the matter was submitted to the jury for deliberation, the jury foreman, Mr. Stafford, sent a note to the trial judge indicating that he thought that the jury might be hung. The trial judge brought Mr. Stafford into the courtroom in the presence of Appellant, his counsel, and the State where the following exchange took place.

> THE COURT: Court reconvenes, please be seated. Mr. Stafford, you sent a note out. You think you're a hung jury, do you sir?
> FOREMAN: Well, I'm not sure exactly how to answer that. We've have [sic] combed through the facts and we're stuck at this point. I ... I won't call it completely hopeless at this point, but I...we're stuck at the moment.

THE COURT: Do you think further deliberations though may produce the result?

FOREMAN: Could someone give me an answer?

THE COURT: Well, you're the foreperson so.

FOREMAN: I think . . . I think we need some more time.

THE COURT: Well, we'll be happy to accommodate you.

FOREMAN: Can we . . . is it possible that we could go home and try this tomorrow?

THE COURT: No, Sir.

FOREMAN: No, we've got to stay here.

JUROR: I can't go home and do this tomorrow.

THE COURT: No, you . . . you're not allowed to.

JUROR: I don't ever want to do this again and I'm dead serious.

THE COURT: Well, you shouldn't even be talking right now anyways.

FOREMAN: Okay. Well, can we have a little more time. [sic]

THE COURT: Yes. All rise, the Court recesses.

Tr. pp. 299–301.

The record reflects that some time later the trial judge instructed the bailiff to bring in the foreman to inquire about deliberations. The following exchange took place at that time.

THE COURT: Are we on the record? The Court has instructed the bailiff to ask Mr. Stafford to come in the Courtroom and have a seat please and instructed her to stay in the jury room with the jury to see that they don't deliberate while the foreperson is not in the jury room. Mr. Stafford, have you made any progress as a body since you last visited here . . . us in the Courtroom?

FOREMAN: We made some slight progress. I guess if I may . . . should I tell you what's holding us up?

THE COURT: Put that microphone in front of him. Yes, please. Please do.

FOREMAN: We have . . . we have one juror who continually keeps going back to his own life experiences. Saying that . . . my life experiences . . . my life experiences. And it is my responsibility as a jury foreman, I keep redirecting him back to the testimony, the evidence and saying this is what we're to consider. You know, it's . . . yes, we are suppose [sic] to talk about common sense. We're suppose [sic] to talk about . . . use our life experiences but we have rehashed and rehashed and rehashed the evidence over and over and over. And it's just down to a point where it has been questioned . . . I mean, I've even asked questions the same way, different, the same questions different ways and he agrees and then he turns around and says . . . then disagrees when I ask him again just a different way. And we say . . . and we're writing down what he's saying and then he says, no, I didn't say that. And there is something . . . there is something wrong and we're not quite picking it up. But the other jurors are at the point where they . . . they pulled out the sheet where they were ready for me to come out here and you need to tell the Judge that there is a problem with this juror. And so . . . and I said I wanted to hold off. I've been putting my hand and saying, no, let's talk about this. So, that's basically where we're at. And I . . . I finally said, are you not . . . are you not willing to budge? I mean you . . . you keep saying . . . is this hopeless? If its hopeless I'm going to go . . . I'm going to send a note into [sic] say we're hopeless and that's it. And he said no. And I said, then we're going to sit here all

night long. You know, if we're hopeless, we're hopeless. To go on or not. Well what's it going to take? Because you know, eleven people can't be...totally wrong. And he keeps jumping back...well, you don't...you don't know what my life experiences are. So, no I don't. And I said I don't think its proper for you to discuss all of that here anyway. And the others...and I instructed the others don't be asking him what his life experiences are. I didn't think it was appropriate. So, it's...it's to the point now where, you know, when you repeat yourself a half a dozen times, it's...it's...it's a problem and now I really do think there is something underlying with this person. He's...he's indicated that he's had problems before.

THE COURT: He's indicated what?

FOREMAN: He's had problems before with the law. And...on both sides, good and bad, which concerns me. And I was to the point, I had already written a note. I was about ready to send a note in and ask that perhaps he...he couldn't...and the other jurors felt the same way, but I had just written a note to myself or written a note that I hadn't shared with anyone else and I was ready to send it in and ask that perhaps this gentleman may not be able to judge this case fairly and that he might need to be dismissed and we seat one of the alternates. Because I'm concerned with his ability to do that. Because we...we have just been over and over and over the evidence and he just...every time we...it's just...he says, well, it's this point. And so we go over that point and then he says no, it's that point. And then we say, okay. And then we...we talk about that point. And then he says no, I'm out to this point. And then we say, we just discussed that point. And then when we...we started to find out some things by asking some questions

that he's...there is something that we don't know. He just...we sense there is something there that he's just not telling us and he's just not going to budge. But yet he's not willing to throw in the towel and just say I'm not going to budge. So, you know, so what do you do? So, that's...so that's where we're at. So...I think he's having a real hard time with being willing to judge this case either way. He really doesn't seem to want to...to make a decision either way. Good, bad, indifferent, either way. He just doesn't know what to do. That's what it appears to me. And the others were ready for me to come in and tell you that. And I wanted to continue to try to get him to think objectively but we're not getting there. We've made a little progress, but its [sic] little.

THE COURT: Any questions of Mr. Stafford?

MR. CHAILLE: I do have a question, but we should probably discuss it before.

THE COURT: All right. Mr. Williams, do you have any questions you think would be appropriate?

MR. WILLIAMS: I do. The juror who you're referring to, he's still communicating with the rest of you. He's flip-flopping but he's still communicating. He's still being responsive. He's not refusing to deliberate.

FOREMAN: He's not refusing to deliberate, but he...he's only speaking when spoken to.

MR. WILLIAMS: Okay. That's my question I have, Judge.

THE COURT: I assume you've looked at your instructions since you've been back there. There is that one that says any juror who refuses to deliberate or expresses an intention to disregard the law or decide the case based on any other improper basis, it is your obli-

gation as the foreman. Based upon what you've said it almost would appear that he's basing his decision on improper basis because you also get the instruction that you should disregard any and all information you derive from any other source and you should only consider the evidence that has been introduced in this case. Have...have you contemplated that, sir?

FOREMAN: Yes, sir. That...that's what I was referring to earlier. That....that some of the other jurors have pointed out and I looked at that and that's what led me to start the note to ask you to, you know, maybe we need to dismiss this gentleman because he's used the word assume and...and I even had it written on my note that he's using a lot of what if's, could've's, this, that, you know.

THE COURT: Speculation.

FOREMAN: Yes, we can't use that.

THE COURT: You've been also advised not to speculate.

FOREMAN: Absolutely. I...I...I keep going back and said...this isn't my first time to be a jury foreman and I told him, I said we have to stay with the evidence and it's the testimony of things that we were given in the courtroom with the witnesses, the videotapes and the things that we were given. That's what we have to look at. And so we keep going back to that. But somehow how [sic] or another it keeps going to it could've, would've it should've.

THE COURT: All right. Thank you, Mr. Stafford.

FOREMAN: You're welcome.

THE COURT: You can go back in the jury room.

Tr. pp. 301–306.

Out of the hearing of the jury, the deputy prosecutor asked the court if they should question Mr. Stafford about his recollection of the juror's answers to questions during voir dire for the purpose of determining if the answers given were false or misleading. The trial judge asked Mr. Stafford if he had any recollection of the juror's answers. Mr. Stafford replied that he did not recollect that juror's answers.

The trial judge then asked counsel how they wanted him to proceed. Appellant's counsel took the position that the trial judge should either let the jury deliberate or declare the jury hung. Appellant's counsel argued as follows:

> MR. WILLIAMS: ...I know there was [sic] some questions about dismissing this juror, but I didn't hear anything...I mean he kept, at first he kept saying that the juror keeps referring to his own life experiences. Well, all jurors rely on their own life experiences in determining cases. And while his logic may be frustrating to the foreman and the rest of the jury, he's continuing to deliberate. He's not refusing to deliberate. He's relying on life's experiences. As frustrating as that may be, that's not grounds for dismissal of a juror. So, I would either say you need to declare them hung or let them continue to deliberate.

Tr. p. 308.

The deputy prosecutor took the position that the juror's experience with law enforcement was influencing the way he was looking at the evidence and that the juror must have lied during voir dire. The trial judge pointed out that the jurors are supposed to use their life experiences when they judge the testimony of witnesses. Appellant's attorney noted that Mr. Stafford said that the juror's past experience with law enforcement was both positive and negative. Appellant's attorney reiter-

ated his position that he thought there were no grounds to dismiss the juror.

The trial judge found as follows:

THE COURT: Well, based upon what Mr. Stafford says, the Court makes the finding that this particular juror has failed to follow the Court instruction in disregarding any and all information derived from any other source. And he's considering other...he's cons...he's going beyond what the evidence is in this case and he's speculating, which the Court has instructed the jury not to speculate. They have to base their decision based upon the evidence as presented to them. And the Court finds that this particular juror has decided the case based upon an improper basis. Therefore, the Court is going to order him to [sic] dismissed from the jury over the defense objection and [T.H.] will be ordered to resume...to assume that position. Ms. Davis, would you please...and I don't know which juror it is, so would you please go and ask the foreman who the juror is and then escort that juror from the Courtroom and give him his whatever material he needs, and then have [T.H.] come into the Courtroom so I can advise him he is not to re...assume as a regular jurors [sic] position.

Tr. pp. 310–311. Appellant's counsel objected to the ruling of the trial judge and to the procedure that was employed.

Prior to the alternate juror's entrance into the courtroom, the trial judge further found as follows:

THE COURT:...(indiscernible)...v state, the trial Court may exercise its discretion and replace any juror who [sic] experiencing a great deal of anxiety. It also would appear to me from the...the foreman's analysis that this particular juror is suffering anxiety. That is cited at 476 N.E.2d 835.

MR. WILLIAMS: Judge, could we bring that juror in to see if that's true?

THE COURT: No, I'm not going to. It would also appear from what the foreman has said the juror has not been truthful during voir dire. They...plenty of cases hold that based upon the juror lying on voir dire, the defendant is entitled to a new trial. If the Court finds that the juror has lied on voir dire and I can rest assured that I did not hear any juror and Mr. Chaille is always very dutiful in asking jurors those kinds of questions and I didn't hear any.

Tr. p. 312. At that point, the alternate juror entered the courtroom. The trial judge informed the alternate that he was now a regular member of the jury. The record seems to reflect that the alternate was present when the following colloquy took place:

MR. WILLIAMS: Judge, for the record which, I'm sorry.

THE COURT: Which juror was it?

BAILIFF: Mr. Hill.

THE COURT: Mr. Hill. Number one, two, three. Juror number three. Okay.

MR. WILLIAMS: And the Court's finding that he was untruthful during voir dire in what regard?

THE COURT: Well, Mr. Chaille asks jurors, each one, he goes down the row one at a time and asks them all the same question, don't ya? About is there anything else that you know about that you do not think you could be fair that you should talk to me about? And if this juror is now expressing his views of being torn and from...and being swayed by life experiences, if he would have told that to Mr. Chaille, Mr. Chaille would have said, maybe even asked for cause. I mean it may have been to rise to the level of cause and I'm sure he would have preempted him so.

All right. I'm done with the record for now.

Tr. p. 313.

Deliberations resumed and the jury found Appellant guilty of attempted battery by means of a deadly weapon. The jury found Appellant not guilty of intimidation. This appeal ensued.

## DISCUSSION AND DECISION

 In cases involving the removal of a prospective juror from a panel, or removal of a juror as a result of developments during a trial, the trial court has significant leeway under Ind. Trial Rule 47(B) in making the determination of whether to replace a juror with an alternate. *See Riggs v. State*, 809 N.E.2d 322, 327 (Ind.2004). The standard of review of a trial court's decision in those situations is abuse of discretion. *Id.* However, removal of a juror after deliberations begin implicates a defendant's right to a unanimous verdict and the defendant's right to a jury trial. *Id.* (citing *Shotikare v. United States*, 779 A.2d 335, 344 (D.C.2001)). As our supreme court stated in *Riggs:*

> Removal of a juror after deliberations have begun is ultimately a matter requiring deference to the trial court's judgment, but it raises a number of considerations not present before deliberations begin. As a result, it demands a carefully developed record as to the grounds for removal and also requires precautions to avoid inappropriate consequences from the removal.

809 N.E.2d at 327.

 Typical grounds for discharge of a juror are bias due to exposure to publicity or contact with a party or witness. *Id.* "Once deliberations begin, discharge of a juror is warranted only in the most extreme situations where it can be shown that the removal of the juror is necessary for the integrity of the process, does not prejudice the deliberations of the rest of the panel, and does not impair the parties' right to a trial by jury." *Id.* at 327–328. Some jurisdictions hold that a mistrial is required if discharge occurs after deliberations begin. *Id.* at 328 (citing *State v. Adams*, 320 N.J.Super. 360, 727 A.2d 468, 471 (1999)).

 A failure to agree, however unreasonable, is a ground for mistrial, not removal of the obstacle to unanimity. *Id.* at 328. Removal of a juror for misconduct requires more than a refusal to negotiate further. *Id.* If there were a showing of physical confrontation, or attempts to intimidate other jurors, then removal may be permissible. *Id.*

 The trial court must establish the record to support removal of a deliberating juror, just as a record is required to establish bias of a prospective juror. *Id.* at 329 (citing *Lindsey v. State*, 260 Ind. 351, 357–59, 295 N.E.2d 819, 823–24 (1973)). When the trial judge is making the determination of whether the juror should be removed, the trial judge should be careful in his questioning to avoid affecting the juror's judgment. *Id.* at 329. The trial judge may find that the juror should continue to serve on the panel. Further, during this determination process, the trial judge "must be careful not to convey improper messages, either verbal or silent, to the other jurors." *Id.* The trial judge should avoid the inference that the juror was dismissed because of his or her view of the case. *Id.* Removal should be accompanied by an instruction to the jurors that removal in no way reflected approval or disapproval of the view expressed by the juror. *Id.*

In the present case, the trial judge did not interview the juror whose conduct was at issue. Therefore, the record is not as developed as is required for a juror to be

removed once deliberations have begun. The trial court found that the juror had lied during voir dire. However, Mr. Stafford told the trial judge that he did not recall any of the juror's answers during voir dire. Furthermore, there was nothing in the record to support the trial court's finding, but for the speculation of counsel that the juror must have lied. The trial court also found that the juror needed to be removed due to anxiety. However, there is nothing in the record to support the trial court's finding. The trial court found that the juror had already decided the case on an improper basis. The record before us reflects that the juror reached a different conclusion than the other jurors based upon his own life experiences. However, there is nothing in the record to suggest that the juror had decided the case on an improper basis. As our supreme court stated in *Riggs*, a failure to agree, however unreasonable, is a ground for mistrial, not removal of the obstacle to unanimity. 809 N.E.2d at 328. Based upon the record before us, we find that the trial court erred.

## CONCLUSION

The trial court erred by removing a juror after deliberations had begun. The juror was not questioned, and the record is not developed to the degree necessary to support the reasons cited by the trial judge for removal of the juror.

This matter is reversed and remanded to the trial court for a new trial.

MAY, J., and CRONE, J., concur.