ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana



FILED

08/31/2017, 10:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

Adrian Durden,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 31, 2017

Court of Appeals Case No.
49A02-1701-CR-188

Appeal from the Marion Superior
Court

The Honorable Grant W.
Hawkins, Judge

Trial Court Cause No.
49G05-1505-MR-17228
49G05-1506-F5-19402
49G05-1506-F5-19449
49G05-1506-F5-20230

**Brown, Judge.**

[1] Adrian Durden appeals his conviction for murder. Durden raises one issue which we revise and restate as whether the removal of a juror after the jury had begun its deliberations requires reversal. We reverse and remand.

### Facts and Procedural History

[2] In December 2016, Durden was tried by a jury on charges of murder and eight drug-related offenses including conspiracy to commit dealing in a narcotic drug, dealing in a narcotic drug, and possession of a narcotic drug.[1] Approximately one hour and forty-four minutes after the jury began its deliberations,[2] one of the jurors ("Juror No. 12") sent a handwritten note to the trial court which read: "Judge I would like to be excused from this case I can not agree quickley [sic] on the charges. I just cant [sic] come to a decision on the charges." Appellant's Appendix Volume IV at 64.

[3] The trial court stated on the record:

> I talked with the lawyers in chambers. The process upon which you agreed was to invite the foreperson into open court, ask him – it's Mr. (omitted) by the way, the gentleman in seat number seven there, if a verdict has been reached on any count. If no verdict has been reached on any count I think we agreed to excuse Ms. (omitted) and put Mr. (omitted) in her place. That

---

[1] This appeal follows Durden's convictions at his second trial after Durden's first trial resulted in a hung jury.

[2] The court stated that "[t]he jury started deliberating at 1:57, it's now about 3:41." Transcript Volume IV at 176.

way we would be guaranteed of one African-American on our jury. Mr. (omitted) would be our remaining alternate. If they have reached a verdict on any counts then the question is how we handle it and I think the first part of the discussion was we'll either ask them to write with a different color pen on the remaining verdict forms or ask Mr. (omitted) if his verdict would be the same on the counts they've already decided or do both.

Transcript Volume IV at 177. The court asked Durden's defense counsel "[w]here are you on that," and defense counsel stated "I would be more comfortable with, if they've reached verdicts on some of the counts, to keeping Ms. (omitted) on but if they have not we don't object to removing her and placing Mr. (omitted) on the panel." *Id.* The court said "[o]kay, so if they have reached a verdict on any counts we keep her there," defense counsel replied "I think just to preserve the integrity of the process," the court stated "[w]ell, she's . . . subverting the integrity of the process," and defense counsel said "[w]ell, it's been an hour and a half, two hours or so." *Id.* at 177-178.

[4]     The court said "I think in a situation like this we all have to agree" and asked that the jury foreperson be brought into the courtroom. When asked if he knew that another juror had sent a note indicating she wanted to be excused from the case, the jury foreperson responded affirmatively. When asked if the jury had agreed on any counts yet, he responded affirmatively, and when asked how many counts, he indicated six counts. The court asked if there was a verdict on the murder charge, and the foreperson replied "no, that's one we're waiting to do." *Id.* at 179. The jury foreperson returned to the jury room.

[5] The bailiff asked the court "is he allowed to tell the others," and the court stated: "Tell him to hold it for a moment, don't discuss it. Unless they pound on her I think we're done for the day if this note is to be taken as dramatically as it seems to be written. Any thoughts or suggestions, [defense counsel]." *Id.* at 180. Defense counsel asked "[w]hat is the court's position as far as brining out Mr. (omitted)," and the court answered "[w]ell that was an option that you had –," defense counsel stated "[r]ight, and I think –," and the court stated "I'd offered up two options, both in the alternative and altogether and you said no." *Id.* Defense counsel said "[w]ell, no, I meant . . . I'm curious where they are, if they were nowhere near anything but –," and the court stated "[w]ell, I don't want to bring him out here and say hey, if you had to vote would this thing be over with by now. I don't want to do something like that." *Id.*

[6] Durden's counsel said "[l]et me talk with my client," and the court said "[o]kay." *Id*. Durden's counsel then stated: "Judge, we are not opposed to having juror number 12 excused, being replaced by the second alternate, Mr. (omitted)." *Id.* The court then asked "[a]ny caveats, any conversation you want me to have with anyone," and defense counsel replied "I don't think anything – at this point I don't know what would be – what would be any topic of conversation." *Id.* at 180-181. The court said "I can always say no, I just wanted to know if you –," and defense counsel said "I can't think of anything, Judge" and "I mean, that's why there's an alternate, I guess." *Id.* at 181. The court asked "[n]ow, do you want me to bring anybody out here or do you want me to just go in there and say Ms. (omitted), thank you very much for your

service, you're released, Mr. (omitted), you're now on our jury and can take part in deliberations," and Durden's counsel replied "I think the less traumatic it is the better." *Id.* at 181. The court stated "[w]ell, that's – I prefer it that way but I –" and defense counsel stated "I prefer it that way." *Id.* at 181-182. The court stated "I kind of needed your permission if I'm not doing it on the record," and defense counsel said "[y]es." *Id.* at 182. The court took a recess and, after reconvening, stated:

> Let me report that with your permission I did speak to the jury after our last hearing, released Ms. (omitted), told Mr. (omitted) that he was part of the jury. On my way out, Mr. (omitted), the foreman, asked me if they were supposed to go over the counts on which they'd already reached a verdict and I said you are the jury. You decide that. I think that's appropriate. Mr. (omitted) may or may not have changed the dynamic.

*Id.* at 184. The jury found Durden guilty of murder and the eight drug-related counts.

## Discussion

[7] The issue is whether the removal of Juror No. 12 after the jury had begun its deliberations requires reversal. Durden contends that, although his defense counsel did not object and acquiesced in the action of the court, the procedure resulted in fundamental error. He argues that Juror No. 12 was dismissed merely because she could not agree with the other jurors, that the court's procedure of skipping over the first alternate available and calling the second violated Ind. Trial Rule 47(B) and the rule does not provide an exception for

courts to arbitrarily change the order in which they replace regular jurors in order to afford racial balance on a jury, and that the court failed to instruct the remaining jurors.

[8] The State responds that Durden's affirmative agreement with the trial court's proposed procedure for responding to Juror No. 12's note means that fundamental error review is unavailable. The State also argues that the record reveals no evidence of any disagreement between any of the jurors, the jury had not yet considered the murder charge at the time Juror No. 12 was replaced, Durden does not attempt to show the alternate juror was not qualified, and Durden has not shown how it was impossible for the jury to fairly return a verdict pursuant to the court's instructions.

[9] Generally, failure to object at trial waives an issue for review unless fundamental error occurred. *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Id.* The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. *Id.*

[10] The Indiana Supreme Court has stated that removal of a juror after deliberations have begun is ultimately a matter requiring deference to the trial court's judgment, but it raises a number of considerations not present before

deliberations begin. *Riggs v. State*, 809 N.E.2d 322, 327 (Ind. 2004). As a result, it demands a carefully developed record as to the grounds for removal and also requires precautions to avoid inappropriate consequences from the removal. *Id.* "Once deliberations begin, discharge of a juror is warranted only in the most extreme situations where it can be shown that the removal of the juror is necessary for the integrity of the process, does not prejudice the deliberations of the rest of the panel, and does not impair the parties' right to a trial by jury." *Id.* at 327-328. "A failure to agree, however unreasonable, is a ground for mistrial, not removal of the obstacle to unanimity." *Id.* at 328 (citing *United States v. Hernandez*, 862 F.2d 17, 23 (2d Cir. 1988) ("That a juror may not be removed because he or she disagrees with the other jurors as to the merits of a case requires no citation."), *cert. denied*, 109 S. Ct. 1170 (1989)). "Removal of a juror for misconduct requires more than a refusal to negotiate further." *Id.*

[11]     The Court in *Riggs* found that "[i]t appear[ed] the effect of the juror's dismissal may well have been the avoidance of a hung jury" and stated "[w]e have often expressed the view that a mistrial is an extreme remedy, warranted only if less severe situations will not address the problem," "[t]he trial judge may guide, encourage and instruct to correct problems in jury deliberations," and "[t]his policy in favor of assisting a jury in reaching a verdict is also reflected in Jury

Rule 28,"[3] but that "it does not permit removal of a juror simply because the juror does not agree." *Id.* The Court further stated:

> The State contends that [the defendant] did not develop a record establishing prejudice to him from the removal. We agree a thorough record is necessary to establish grounds for removal. But it is not up to the parties to show prejudice as to the outcome. *Unjustified removal is structural error, just as much as denial of the right to an impartial jury.* As the United States Supreme Court put it in *Gray v. Mississippi,* 481 U.S. 648, 668, 107 S. Ct. 2045 (1987), "some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error. The right to an impartial adjudicator, be it judge or jury, is such a right." Moreover, to establish that the right is not infringed, the trial court must establish the record to support removal of a deliberating juror, just as a record is required to establish bias of a prospective juror. *Lindsey v. State,* 260 Ind. 351, 357-59, 295 N.E.2d 819, 823-24 (1973).

*Id.* at 328-329 (emphasis added). The Court also stated that "[r]emoval should be accompanied by an instruction that removal in no way reflected approval or disapproval of the views expressed by the juror." *Id.* at 329. Also, Indiana Trial Rule 47(B) states in part that "[a]lternate jurors in the order in which they

[3] Indiana Jury Rule 28 provides:

> If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

are called shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties."

[12] As noted above, the Indiana Supreme Court held in *Riggs* that "[u]njustified removal is structural error," 809 N.E.2d at 328, and it subsequently stated in *Stephenson v. State* that a claim of structural error is "a variant of the claim of fundamental error." 864 N.E.2d 1022, 1030 (Ind. 2007), *reh'g denied*, *cert. denied*, 128 S. Ct. 1871 (2008). *See Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907-1908 (2017) (stating that some errors should not be deemed harmless beyond a reasonable doubt, "[t]hese errors came to be known as structural errors," "[t]he purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial," "[t]hus, the defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself,'" and that "[f]or the same reason, a structural error 'def[ies] analysis by harmless error standards'") (citations omitted).

[13] In this case, the trial court did not question Juror No. 12 on the record regarding her note to determine if she refused to negotiate further or failed to agree with the other jurors. *See Riggs*, 809 N.E.2d at 328 (holding that removal of a juror requires more than a refusal to negotiate further and noting a failure to agree, however unreasonable, is not grounds for removal); *Scott v. State*, 829 N.E.2d 161, 167-168 (Ind. Ct. App. 2005) (noting that the trial judge did not interview the juror whose conduct was at issue and therefore the record was not

as developed as required for a juror to be removed once deliberations had begun and remanding for a new trial). Further, the court did not question any of the jurors on the record regarding the potential impact of the removal of the juror, and the record does not show that Juror No. 12's removal was accompanied by an instruction that her removal in no way reflected approval or disapproval of the views expressed by her. *See Riggs*, 809 N.E.2d at 329 (removal should be accompanied by such an instruction). We additionally observe that the trial judge stated that he had spoken with the lawyers in chambers, and the record does not include these communications regarding Juror No. 12's note. Also, it appears from the record that the trial judge personally entered the jury room to release Juror No. 12, and thus the record does not reflect any statements the judge may have made to the jurors. With respect to the State's argument that Durden has not shown how it was impossible for the jury to fairly return a verdict on the law and that his defense counsel agreed to Juror No. 12's removal, we observe that the Court in *Riggs* stated that unjustified removal constitutes "structural error" and that "it is not up to the parties to show prejudice as to the outcome." *See id.* at 328; *see also Weaver*, 137 S. Ct. at 1907-1908 (stating a structural error defies analysis by harmless error standards). On the record before us, we conclude that Durden has established that reversal is warranted.

## *Conclusion*

For the foregoing reasons, we reverse Durden's convictions and remand for a new trial.

Reversed and remanded.

May, J., and Pyle, J., concur.