**Michael DIXON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 84S00–8609–CR–820.

Supreme Court of Indiana.

June 7, 1988.

Susan K. Carpenter, Public Defender, Theresa D. Harper, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

This case presents the question of whether Trial Rule 47 permits a judge to replace a juror who refuses to participate in jury deliberations. We hold that it does.

**4** ■

Appellant Michael Dixon was tried by jury and convicted of burglary, a Class B felony, Ind. Code § 35–43–2–1 (Burns 1985 Repl.). The jury also found he was an habitual offender, Ind. Code § 35–50–2–8 (Burns 1985 Repl.). His basic sentence of twenty years for burglary was enhanced by thirty years because of the habitual offender finding.

## I. *Juror Refusal*

■ During jury deliberations on the habitual offender question, one juror refused to find for or against Dixon. Upon questioning by the trial judge, the juror stated, "It's not something I want on my head." The record reveals that the juror was refusing to participate in the deliberations, as distinct from voting for acquittal. Over Dixon's objection, the juror was excused and replaced by an alternate.

The trial court has discretion to remove a juror who "become[s] or [is] found to be unable or disqualified to perform [her] duties" under Trial Rule 47(B), Ind. Rules of Procedure. *Ferry v. State* (1983), Ind. 453 N.E.2d 207. The trial court correctly found that the juror became unable to perform her duties during the habitual offender deliberations and properly replaced her with an alternate.

## II. *Prejudicial Publicity*

After the first day of the trial, a juror saw a local newspaper article stating that Dixon was on trial for burglary. The article stated Dixon faced an enhanced fifty year sentence and designation as an habitual offender. Dixon did not request that the juror be excused but chose to move for a mistrial.

■ The denial of a mistrial will be reversed only for an abuse of discretion by the trial court. *English v. State* (1985), Ind., 485 N.E.2d 93. The trial court's broad discretion in determining whether or not to declare a mistrial will be exercised ordinarily "only when the circumstances are such that the trial cannot be continued without subjecting the defendant to grave peril of grievous error." *Carman v. State* (1979), 272 Ind. 76, 396 N.E.2d 344, 346. In *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819, we established guidelines for trial courts when jurors are exposed to potentially prejudicial publicity. When an individual juror has seen or heard potentially prejudicial publicity, the trial judge should interrogate that juror to determine the degree of exposure and the likely effect thereof. The juror exposed to the publicity should be individually admonished by the trial court.

Dixon alleges the court failed to admonish the individual juror and notes that the error was not cured by admonishing the jury collectively at recesses.

■ The trial court questioned the juror individually and found that any prejudice that may have arisen in the mind of the juror who had a fleeting exposure to a news story about the defendant was insufficient to warrant a mistrial. The judge admonished the entire jury to disregard the independent interrogation of the juror and avoid contact with outside sources. Such admonishment is presumed to cure any error unless the contrary is shown. *See Scott v. State* (1982), Ind., 434 N.E.2d 86. The trial judge properly denied the motion for mistrial.

## III. *Sufficiency of the Evidence*

Dixon alleges that the State failed to produce sufficient evidence of probative value to support either the jury's guilty verdict on the burglary charge or the finding that Dixon was an habitual offender.

The evidence at trial showed that in the late afternoon of July 7, 1985, Mike Dixon offered money to two teenagers, Mishon Bradford and Stacey Irvin, as payment for entering a house, putting specified items in a bag and bringing the items to him while he waited nearby in his pickup truck. Dixon told the boys that someone had already broken into the house. The boys agreed, and Dixon drove them to James Jenkins' house.

Peter Anderson lived two houses down from James Jenkins. Anderson was napping when an unidentified man knocked on his door and told him that the house two doors down had been broken into. Thirty minutes to an hour later Anderson went

outside to investigate. Anderson saw a black man, later identified as Mishon Bradford, exit Jenkins' house with a black bag and run away. Bradford ran toward a pickup truck occupied by Dixon. The truck was parked in an alley but still visible to Anderson. Anderson stopped a third man, later identified as Stacey Irvin, as he exited through Jenkins' front door. Anderson knew Jenkins was not at home. Anderson instructed Irvin to call the first man back. Irvin yelled, "Mike! Mike! Mike!" But Dixon and Bradford drove off in the truck, leaving Irvin to face Anderson and, presently, the police.

When Jenkins returned to his home, he found missing some thirty cassette tapes, a tape deck, a radio receiver and a VCR. The front door had been broken open by a rock smashed through the glass. The glass had not been broken when Jenkins left home earlier in the day and the door had been locked. The missing items were later recovered in the alley in a black plastic garbage bag. Two days later, police arrested Michael Dixon.

■ The evidence was sufficient to show beyond a reasonable doubt that Dixon knowingly or intentionally aided and induced Mishon Bradford and Stacey Irvin to break and enter the dwelling of James Jenkins with the intent to commit theft therein. This proof comprises all the essential elements of aiding and abetting burglary and is sufficient to support a conviction for burglary. *See* Ind. Code § 35–41–2–4 (aiding or inducing); § 35–43–2–1 (burglary).

■ Dixon further argues that the evidence is insufficient to support the habitual offender finding because the certified copies of the order book entry pertaining to a prior conviction reflect that the offense was committed on October 21, 1980, and that the trial and conviction occurred on June 12, 1980. The fact that the order book entry containing the June 12, 1980, date was file marked June 12, 1981 and certified by the clerk on June 12, 1981, creates the inference that the entry was incorrectly dated 1980 and that the true date is 1981. Evidence that Dixon was convicted of a felony on June 12, 1981, and

a felony on May 15, 1974, is sufficient to support a finding that Dixon is an habitual offender.

## IV. *Other Issues*

■ Dixon claims that the trial court erred by instructing the jury on the elements of aiding and abetting when the information charged him with burglary. The law is otherwise. The court may properly instruct on a defendant's liability as an accessory where the information charges him as a principal, provided the evidence supports such an instruction. *Richey v. State* (1981), Ind., 426 N.E.2d 389.

■ Finally, Dixon claims that the habitual offender count, filed seven days before trial for the purpose of inducing him to plead guilty after plea negotiations had broken down, was an abuse of prosecutorial discretion. He is incorrect. An habitual offender count does not allege a separate crime or change the theory of the case and is therefore a permissible amendment to the information after arraignment and plea on the principal offense so long as the defendant has adequate time to prepare a defense. *Howard v. State* (1978), 268 Ind. 589, 377 N.E.2d 628, *cert. denied,* 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708. The State filed the habitual offender count on January 23, 1986. Dixon moved for a continuance and it was granted. The trial began on March 5, 1986. Dixon's substantial rights were not harmed and he had adequate time to prepare his defense.

The trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK, and DICKSON, JJ., concur.