**FOR PUBLICATION**



ATTORNEYS FOR APPELLANT:

**SCOTT KING**
**RUSSELL W. BROWN, JR**.
Scott King Group
Merrillville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SCOTT A. WRIGHT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1310-CR-526 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
The Honorable Natalie Bokota, Magistrate
Cause No. 45G01-1207-FA-17

**July 11, 2014**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

Scott A. Wright was found guilty of Class A felony child molesting[1] after the trial court, during jury deliberations, replaced the sole juror who would have voted to find Wright not guilty. Replacement of the juror was error[2] under the facts before us, and the jury was not properly instructed that removal did not reflect approval or disapproval of the juror's views. We accordingly vacate Wright's conviction and remand for a new trial.[3]

### FACTS AND PROCEDURAL HISTORY

Wright's jury trial commenced in August 2013. About two hours after the jury began to deliberate, the trial court received a note that said "We are at a standstill. We are 11 out of 12 guilty. One is voting not guilty and is not willing to change his mind." (Tr. at 288.) The court told the jurors to continue to deliberate and try to reach a verdict. About an hour later another note to the court said, "Still at a standstill. Nothing will change his mind." (*Id*. at 291.)

The court called the jurors back into the courtroom and asked if there was anything it could do to assist them or any questions it could answer. The jury indicated it had no questions but that the vote had not changed and "[o]ne juror feels like he is being bullied into changing his mind. He has suggested he will change his mind just to please us." (*Id*. at 297.) The court responded, "Your dinner is on the way. Please reread the instructions." (*Id*.) The next communication was that the holdout juror "will not talk and seems to be falling asleep at

---

[1] Ind. Code § 35-42-4-3.

[2] Because Wright is entitled to a new trial for that reason, we need not address his argument that certain prejudicial evidence against him was wrongly admitted at his first trial.

2

times. We cannot deliberate if he will not talk to us and he told us he does not want to talk."

(*Id.* at 297-98.)

The court noted the State had indicated it thought a male juror was starting to fall asleep during closing argument and the State was "thinking or inferring or speculating it might be the same juror." (*Id*. at 298.) The State confirmed it noticed the juror might have been sleeping but it "couldn't be sure if he was closing his eyes to listen." (*Id*.) It told the court, "we need to switch this juror in seat number one out with an alternate to make sure we have a juror who's heard all the evidence, who's heard all the deliberations and replace the juror who is refusing to deliberate." (*Id*. at 299.)

The court declined to do so at that time, then called the jury foreperson into the courtroom. The foreperson, said the juror would not deliberate: "He was talking at the beginning, but within probably the last hour has not said a single word to us. We cannot deliberate with him," (*id*. at 304), and he "was dozing off." (*Id*. at 303.) Wright's counsel asked the foreperson "he just wouldn't change his mind after people were trying to sway him?" The foreperson responded, "Correct, and he did make probably three or four comments that he will make up his mind just so he could go home." (*Id.* at 307.) Another juror told the court, "He's just quiet and dozing off, making small talk about other things other than what we need to be speaking about." (*Id*. at 310.)

The court then said, "if it were just an issue of someone who disagrees with the other

---

[3] We heard oral argument June 4, 2014, at the French Lick Casino and Resort Center before the Indiana State Bar Association's Solo and Small Firm Conference. We thank the Bar Association and the Resort for their hospitality and commend counsel on the quality of their oral advocacy.

jurors, we of course – we wouldn't replace that person," (*id*. at 317), but the juror "has stopped deliberating. It's one thing to stick to your guns, it's another to refuse to participate in the cooperative effort of deliberation." (*Id*. at 317.) It questioned the other jurors individually about the holdout juror. Most indicated he had dozed off at some points and was no longer deliberating, but some testified he had earlier explained his position, he fully understood what was going on, and he "did speak his mind and say why he was voting the way he was." (*Id*. at 336.) The court granted the State's motion. It replaced Juror 356 with an alternate, and Wright was then found guilty.

## DISCUSSION AND DECISION

1.      <u>Replacement of Juror 356</u>

Indiana Trial Rule 47 provides: "Alternate jurors . . . shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties." Removing an impartial juror who has voted to acquit based on the evidence presented at trial and on the juror's life experiences "gravely imperil[s]" a defendant. *Gavin v. State*, 671 N.E.2d 440, 447 (Ind. Ct. App. 1996). A trial court has broad discretion to remove a juror before deliberations begin, but removing a dissenting juror after that point implicates the defendant's right to a unanimous verdict and the defendant's right to a jury trial. *Riggs v. State*, 809 N.E.2d 322, 327 (Ind. 2004).

Removal of a juror after deliberations have begun is ultimately a matter requiring deference to the trial court's judgment, but it raises a number of considerations not present before deliberations begin. *Id*. As a result, it demands a carefully developed record as to the

4

grounds for removal and also requires precautions to avoid inappropriate consequences from the removal. *Id.* Once deliberations have begun, discharge of a juror is warranted only in the most extreme situations where it can be shown that the removal of the juror (1) is necessary for the integrity of the process, (2) does not prejudice the deliberations of the rest of the panel, and (3) does not impair the party's right to a trial by jury. *Id.* at 328-29.

A failure to agree, however unreasonable, is a ground for mistrial, not removal of the obstacle to unanimity. *Id.* at 328. "That a juror may not be removed because he or she disagrees with the other jurors as to the merits of a case requires no citation." *Id.* (quoting *United States v. Hernandez,* 862 F.2d 17, 23 (2d Cir. 1988), *cert. denied sub nom Quinones v. United States*, 489 U.S. 1032 (1989)). Removal of a juror for misconduct requires more than a refusal to negotiate further. *Id.* If there were a showing of physical confrontation or attempts to intimidate other jurors, then removal may be permissible. *Id.*

The trial court removed Juror 356 because he "was dozing during the deliberation process" and

> when he's been asked questions by the other jurors which is their right and duty to understand his position, that is the crux of the deliberative process, he's not responding. He won't answer. So he has stopped deliberating. It's one thing to stick to your guns, it's another to refuse to participate in the cooperative effort of deliberation.

(Tr. at 317.)

We find instructive the discussion of what is "refusal to deliberate" in *People v. Cleveland*, 21 P.3d 1225, 1237-38 (Cal. 2001):

> [P]roper grounds for removing a deliberating juror include refusal to deliberate. A refusal to deliberate consists of a juror's unwillingness to engage

5

in the deliberative process; that is, he or she will not participate in discussions with fellow jurors by listening to their views and by expressing his or her own views. Examples of refusal to deliberate include, but are not limited to, expressing a fixed conclusion at the beginning of deliberations and refusing to consider other points of view, refusing to speak to other jurors, and attempting to separate oneself physically from the remainder of the jury. The circumstance that a juror does not deliberate well or relies upon faulty logic or analysis does not constitute a refusal to deliberate and is not a ground for discharge. Similarly, the circumstance that a juror disagrees with the majority of the jury as to what the evidence shows, or how the law should be applied to the facts, or the manner in which deliberations should be conducted does not constitute a refusal to deliberate and is not a ground for discharge. A juror who has participated in deliberations for a reasonable period of time may not be discharged for refusing to deliberate, simply because the juror expresses the belief that further discussion will not alter his or her views.

The removal of Juror 356 was improper under the standard our Supreme Court articulated in *Riggs*:

Once deliberations begin, discharge of a juror is warranted only in the most extreme situations where it can be shown that the removal of the juror is necessary for the integrity of the process, does not prejudice the deliberations of the rest of the panel, and does not impair the parties' right to a trial by jury. Indeed, some jurisdictions hold that a mistrial is required if discharge occurs after deliberations begin.

*Id.* at 327-28.

In *Riggs*, removal of the juror was improper because the record did not establish misconduct beyond a mere refusal to negotiate further. 809 N.E.2d at 328. After four hours of deliberation the foreman sent the trial court a note indicating a juror had "become belligerent, not willing to discuss the issues onhand [sic] pertaining to the case." *Id*. at 324. The juror had participated "[v]ery marginally," *id.,* in deliberations. The juror's belligerence had not resulted in physical conduct, but the foreman felt it was "likely to get to that point."

6

*Id*. at 325. The foreman said the juror had "fairly participated in deliberations," and the court asked the foreman, "is it just that the person has reached an opinion and refuses now to budge from that?" *Id*. The foreman responded, "That's correct." *Id*.

Riggs' counsel requested the court ask the foreman if he believed further deliberations would yield a unanimous verdict, and if the answer was no, to declare a hung jury and grant a mistrial. The State asked for removal of the juror. The foreman was recalled and told the court deliberations had "pretty much stopped." *Id*. The foreman thought that if deliberations continued there would have been violence and the juror's conduct was "such as to cause fear [of violence] to other jurors." *Id*. But he then said:

> I don't think any of the jurors are physically fearing, fearing that juror, I mean most of the jurors are not willing to work with that juror because of the way they feel. As well as it goes the other way . . . . That particular juror is not willing to work with any of the other jurors to talk out the various different charges.

*Id*. Riggs' counsel expressed concern that the jury had continued deliberating, "without the juror who caused the problem." *Id*. Our Supreme Court said, "[w]e assume, but are not certain, that this was based on the foreman's reports that little progress had been made since 5:00 p.m., and the assumption that the still unnamed juror, though present, was not engaged in the deliberations." *Id*. at 326.

The holdout juror then asked to see the judge. He told the court, "The head juror accused me of trying to defend the defendant and I'm not going to take that . . . . I don't have to because I'm trying to give a fair and impartial determination to this evidence and to this Court." *Id*. The trial court sent the juror out of the room, then said: "First of all the Court did

7

in fact observe the demeanor of the juror and listened to his words to the point that the Court is troubled if it sends this juror back to deliberate . . . I am fearful of the events that would occur back there." *Id.* The judge then dismissed the juror and placed an alternate juror on the jury. It asked each juror, in the presence of the others, if the removal of the juror would interfere with their ability to render a fair and impartial verdict, to which each responded no. The jury then reached a guilty verdict on two of the four charges against Riggs.

Riggs contended removal of the juror violated his constitutional right to an impartial jury and the record did not support removing the juror. Our Indiana Supreme Court agreed. The record showed deputies reported screaming in the jury room, but it did not indicate who screamed, what they were screaming, or to whom the screaming was directed. The foreman ultimately concluded the other jurors were not in fear of the juror who was removed.

In *Gavin*, replacement of a juror after deliberations began was an abuse of discretion. We noted "the trial judge went to exemplary lengths to try to follow appropriate procedures," but his comments on the record "reveal that he may have been more concerned with avoiding a mistrial in a very serious matter after a four-day jury trial than with protecting Gavin's right to a fair trial." 671 N.E.2d at 447. The trial judge decided to remove a juror solely on the basis of a note that inaccurately stated the juror could not make a decision in the case. In fact, the juror had made a decision to acquit based on the evidence presented at trial. The trial judge would not allow the juror to continue deliberations even after being apprised of the facts.

It appeared from the record that, at the point the note was written, the jury was deadlocked eleven to one. Had the holdout juror not been dismissed and replaced with an alternate, there likely would have been a hung jury. We found it was an abuse of discretion to replace the holdout juror with an alternate, and we reversed:

> [R]emoving an impartial juror who has voted to acquit based upon the evidence presented at trial and on the juror's life experiences does gravely imperil a defendant. . . . Not only was [the holdout juror] able to make an impartial decision with regard to Gavin's guilt of the crimes charged, he had indeed made such a decision, and that decision was based upon the evidence presented at trial.

*Id*.

In the case before us, as in *Gavin*, "the trial judge went to exemplary lengths to try to follow appropriate procedures," *id*., but it is apparent from the record that Juror 356, like the juror in *Gavin*, was "an impartial juror who has voted to acquit based upon the evidence presented at trial," *id*., who should not have been dismissed.

The State distinguishes *Riggs* and *Gavin* on the premise Wright's holdout juror made up his mind before he had heard all the evidence and would not deliberate after that point:[4]

> [T]his was not a situation where Juror 356 discussed the evidence with the other jurors, then came to a not-guilty conclusion, which he then refused to reconsider. That would be a *Riggs* situation, where removal is improperly done to avoid a hung jury. . . . In both *Riggs* and *Gavin*, the removed juror had engaged in deliberations with the other jurors, had considered the evidence, but had rendered the sole not-guilty vote. That situation simply was not present here, where Juror 356 decided his vote before the evidence was completed and

---

[4] The State also distinguishes *Riggs* on the ground its holding was not that removal of the juror was error, but that the record was inadequate: "We hold that this record is not sufficient to support removal of a juror after deliberations have begun." 809 N.E.2d at 327. We do not find the *Riggs* holding so limited. The *Riggs* Court, after completing its lengthy analysis, explicitly said, "Accordingly, as in *Gavin* [*v. State*, 671 N.E.2d 440 (Ind. Ct. App. 1996)], removal was improper." 809 N.E.2d at 328.

would not deliberate the rest of the evidence with the other jurors. Juror 356's refusal to consider the evidence and engage in deliberations created the extreme situation where the integrity of the process was severely compromised.

(Br. of Appellee at 18.)

The State notes the trial court's "carefully developed record," (Br. of Appellee at 11), which it characterizes as reflecting "the other eleven jurors informed the trial court that Juror 356 had refused to engage in deliberations" and Juror 356 decided the victim had lied and made his decision before all the evidence was presented. *Id*. That Juror 356 "decided his vote before the evidence was completed and would not deliberate," (*id*. at 18), is not, as the State suggests, undisputed. One juror the court interviewed said "in the deliberation room, he is participating, but he seems to be . . . shutting down a little bit because he feels somewhat intimidated by the fact that he's not agreeing with the rest of us. . . . He's expressing his views and he's given his one specific reason why he gave his vote." (Tr. at 330-31.) Another juror, when asked if Juror 356 was participating, answered "Participating, not participating at times." (*Id*. at 349.)

We cannot find dismissal of Juror 356 was justified on the ground he would have found Wright not guilty because he believed the victim lied. The jury is the sole judge of the credibility of a witness and we have no right to invade that province. *Pritchard v. State*, 248 Ind. 566, 569, 230 N.E.2d 416, 418 (1967). Nor can we agree with the State's assertion at oral argument that the juror's refusal to deliberate was a trial court finding of fact to which we must defer. We believe "refusal to deliberate" is better characterized as a conclusion of

10

law the trial court reached based on facts concerning the juror's actions or inaction, which conclusion we review *de novo*. *See*, *e.g.*, *Briles v. Wausau Ins. Companies*, 858 N.E.2d 208, 212 (Ind. Ct. App. 2006) (while we defer substantially to findings of fact, we do not do so for conclusions of law; we evaluate conclusions of law *de novo* and owe no deference to a trial court's determination of such questions).

The State, as did the trial court, relies on *Dixon v. State*, 524 N.E.2d 2, 4 (Ind. 1988), where trial court properly dismissed a juror who would not reach a decision. The juror refused to find for or against Dixon. On questioning by the trial judge, the juror stated, "It's not something I want on my head." *Id.* There, "the juror was refusing to participate in the deliberations, *as distinct from voting for acquittal*." *Id.* (emphasis added). Juror 356, unlike the juror in *Dixon*, could, and did, make a decision – he believed the victim was not credible and he voted for acquittal. *Dixon* does not control.

Juror 356 voted for acquittal based on his determination the victim was not credible, and he would not change his mind. His behavior does not fall within the category the *Riggs* Court characterized as "the most extreme situations where it can be shown that the removal of the juror (1) is necessary for the integrity of the process, (2) does not prejudice the deliberations of the rest of the panel, and (3) does not impair the party's right to a trial by jury." 809 N.E.2d at 328-29. Replacement of Juror 356 was error.

2.    The *Riggs* Instruction

It was also error not to instruct the jury that removal of Juror 356 did not suggest the court's disagreement with the juror's views on the merits of the case. The *Riggs* Court noted

11

removal of a juror should be accompanied by an instruction that removal in no way reflected approval or disapproval of the views expressed by the juror: "[T]he trial court must be careful not to convey improper messages, either verbal or silent, to the other jurors, who may infer that the juror was dismissed because of his or her view of the case." 809 N.E.2d at 329. There, the judge asked each juror, in the presence of the full jury, whether the removal of the juror would "in some way interfere" with the juror's "ability to reach a fair and impartial verdict," and each responded "no." *Id.* The *Riggs* Court determined that "general inquiry did not focus sufficiently on the problem of the potential effect of the removal on the jury. A juror might well conclude that the removal of Wallace implied disagreement with Wallace's views on the merits of the case." *Id.*

No such instruction was given to Wright's jury. We agree with Wright that the newly constituted jury therefore could have interpreted the removal of Juror 356 "as a comment by the trial court on its view of the evidence. . . . all the jurors knew that Juror #356 voted for not guilty and knew that the basis for this vote was his disbelief of the victim's testimony." (Br. of Appellant at 14.)

## CONCLUSION

As Juror 356 voted to acquit Wright based on his belief the victim was not credible, he should not have been replaced for refusal to deliberate. Even if dismissal had been permissible, the newly-constituted jury should have been instructed that the removal of Juror 356 did not reflect the court's approval or disapproval of the views the juror expressed. We vacate Wright's conviction and remand for a new trial.

Vacated and remanded.

VAIDIK, C.J., and BAKER, J., concur.