## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 10 2015, 9:22 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Theressa Jones,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 10, 2015

Court of Appeals Case No.
48A02-1501-CR-56

Appeal from the Madison Circuit Court

The Honorable Dennis D. Carroll, Judge

Trial Court Cause No.
48C06-1212-FC-2262

**Kirsch, Judge.**

[1] Theressa Jones appeals her conviction of Class C felony reckless homicide,[1] raising two issues that we consolidate and restate as whether the trial court abused its discretion when it dismissed a juror after deliberations had begun.

[2] We vacate and remand.

## Facts and Procedural History

[3] On July 16, 2012, Jones was a passenger in a U-Haul box truck being driven by another woman ("Driver"). Jones and Driver were arguing, and Jones opened the door and began to jump out of the vehicle, at which time Driver leaned over to grab Jones. The truck swerved, overcorrected, and collided with a motorcyclist, killing him. On December 5, 2012, the State charged Driver and Jones each with Class C felony reckless homicide.

[4] Jones's jury trial commenced on Tuesday, November 18, 2014, and concluded on Friday, November 21, 2014. On November 20, during a recess in the trial, Juror No. 3 sent a message via the bailiff to the trial court, asking, "As a Juror[,] I know that Ms. Jones is charged with reckless homicide[.] [A]m I allowed to know what sentence this can carry? Thank you[.]" *Tr.* at 628. The bailiff told Juror No. 3 that the final jury instructions would address that inquiry. The trial court advised counsel for both parties of the juror's inquiry

---

[1] *See* Ind. Code § 35-42-1-5. We note that, effective July 1, 2014, the Indiana General Assembly enacted a new version of this criminal statute. Because the act was committed and charged in 2012, we apply the statute in effect at that time.

and the response given to him, and it determined that no further action was required.

[5] At the conclusion of trial, the jury received final instruction, including the following:

> It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced that it is erroneous. But do not surrender your honest conviction as to the weight or the effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

*Appellant's App*. at 384. Jury deliberations commenced at approximately 11:30 a.m. and around 1:30 p.m., the trial court received a note from the jury's foreperson, via the bailiff, stating that the jury was "unable to reach a unanimous verdict." *Id*. at 389; *Tr*. at 1001, 1005. The trial court sent directions back to the jury to "continue to deliberate." *Tr*. at 1001. At about 3:30 p.m., the jury foreperson sent out a second note to the trial court, advising, "[W]e're not making progress[.] I do not believe we can reach a unanimous decision." *Id*. About an hour later, the full jury was brought back into the courtroom, in the presence of Jones and counsel for both parties, to ask the foreperson whether additional time would help the jury reach a resolution.

[6]     The foreperson ("the Foreman") identified himself, and the trial court asked the Foreman whether the jury had "made any progress" in the three hours that had elapsed between the first note sent out and the current time, and the Foreman said "Yes, Your Honor." *Id*. at 1006. The trial court inquired:

> TC: [I]n your judgment, has everyone participated on the jury in good faith? Everybody has had a chance to express his or her opinion? Everybody has listened to everyone else? Everybody is participating in good faith?
>
> Foreman: To varying degrees, yes, Your Honor.
>
> TC: All right. But nobody is refusing to deliberate or refusing to participate in the process?
>
> Foreman: No, Your Honor.

*Id*. The trial court asked the Foreman whether there was "a fair chance" that, if the jury continued to deliberate, it might come to a unanimous verdict, and the Foreman replied that it was difficult to answer that question, but "there has been a continuing dialogue[;] however, the dialogue has not produced further shift in the consensus." *Id*. at 1007. The vote was 11 to 1 in favor of a conviction. When asked whether he believed that the jury could "ever" reach a unanimous verdict, the Foreman replied, "At this time, no, Your Honor." *Id*. at 1008. The remaining jurors were polled: "[D]o you believe that there's a chance that if you continue in your conversations that you might reach a unanimous verdict" and each responded in the negative, ranging from "probably not" to "No" to "No chance." *Id*. at 1008-09.

[7]     It was determined that the juror not sharing the opinion of the other eleven was Juror No. 3, the same juror who, during trial, had asked a question about potential sentence length.  The trial court asked the Foreman whether Juror No. 3 had "continued to listen and to participate and to talk and to ask questions and to explain his or her position" and "continued to participate in the deliberation process with the rest of you[.]" *Id.* at 1010-11.  The Foreman replied, in part, "[Y]es, Your Honor, but probably more with me as an individual speaking . . . quietly while others were addressing other issues." *Id.* at 1011.  The trial court asked the Foreman whether Juror No. 3 "has been listening to you, has been talking with the rest of you, has been participating in the deliberation process[,]" and the Foreman answered in the affirmative. *Id.* The trial court then excused the jury and spoke with counsel, at which time the prosecutor remarked that, during the time that the Foreman was telling the trial court that Juror No. 3 was participating in deliberations, he had observed other jurors expressing disagreement with that assessment by shaking their head in a "no" motion. *Id.* at 1013.  Counsel for Jones agreed, stating, "There were at least five jurors who were disagreeing visibly with the foreman." *Id.*  The prosecutor suggested that the trial court reconvene the jury in the courtroom so that each juror could be asked if he or she agreed with the Foreman's assessment of Juror No. 3's participation.  The trial court rejected that proposition, noting that it did not want "to pit one juror against another[.]" *Id.* Jones's counsel moved for a mistrial, but the State opposed it, arguing that Juror No. 3 was not participating in good faith if he or she was only talking, individually, with the Foreman.

[8]     In an effort to explore all viable options before resorting to a mistrial, the trial court decided to invite the two alternate jurors ("the Alternates") into the courtroom to ask each of them whether he or she was satisfied that Juror No. 3 "has been participating in good faith, listening, and simply has a different opinion[.]" *Id.* at 1016. The trial court explained to the Alternates that it was trying to distinguish a strong-willed yet fair-minded juror from a juror who from the start was entirely unwilling to listen and participate in the deliberation process by being open to analysis, argument, and discussion.

[9]     Both of the Alternates opined that the Foreman's previous comments describing Juror No. 3's participation were more diplomatic than accurate. Alternate No. 1 stated that Juror No. 3 made statements during trial and "stayed that course" such that when deliberations began he "came in with a preset mindset" and "[hadn't] really tried considering the other possibilities." *Id.* at 1019. Alternate No. 1 returned to the jury room, but Alternate Juror No. 2 remained to continue to speak with the trial court.[2] Alternate No. 2 shared that Juror No. 3 had made comments early in the trial that indicated he had made up his mind prior to the close of evidence. "His mind was made up and it was very evident immediately into deliberation." *Id.* at 1021. By 11:35 a.m., as deliberations began, Juror No. 3 made comments such as, "I know what's done [and] you're

---

[2] The trial court explained to Alternate No. 2 that she, but not Alternate No. 1, was remaining in the courtroom for further discussion on the issue because, "if we end up excusing somebody," then Alternate No. 1 would step into that person's place, and thus "we're a little more . . . protective of . . . what he hears than we are of you[.]" *Tr.* at 1024.

not going to convince me." *Id*. at 1026. When others would point to pieces of evidence to consider, Juror No. 3 would reply, "That doesn't matter." *Id*. at 1022. Additionally, Alternate No. 2 stated that Juror No. 3 appeared to have "a lack of understanding" of the jury's task. *Id*. at 1025. That is, "[H]e didn't even realize we were supposed to come to a unanimous decision[.] [H]e just thought we were supposed to take a vote and then we could go home." *Id*.

[10] Alternate No. 2 returned to the jury room, and the trial court recalled the Foreman back into the courtroom. The trial court read the "jury deliberation" instruction to the Foreman and inquired of him as to whether Juror No. 3 had been able to follow it. With regard to the instruction's "consult with one another" requirement, the Foreman said that there had been "a good deal of discourse among the jurors," but that Juror No. 3 did not exhibit an impartial consideration of the evidence before reaching a decision. *Id.* at 1029. The trial court distinguished that "[t]here's a difference between resistance to listening and resistance to changing your opinion[,]" and the Foreman stated, "[T]he former caused a problem with the latter." *Id*. at 1031. The Foreman said that Juror No. 3 was not willing to re-examine his views as different ideas and positions were expressed during deliberations. He reached a decision "early on" and declined to be open to other points of view. *Id*. at 1032-33. He reached a point when he was "leaf[ing] through magazines" and did not make eye contact. *Id*. at 1033. The Foreman stated that Juror No. 3 did not appear to understand the concept or requirement of a unanimous verdict, as Juror No. 3 told the rest of the jurors that the verdict form "did not mean that it had to be

unanimous," and when others tried to explain otherwise, he disagreed. *Id*. at 1035.

[11]     Over Jones's objection, the trial court removed Juror No. 3, finding that he was not able to understand the assignment and not willing to participate in deliberations in good faith. The court observed, "[T]he give and take of deliberation simply was not occurring." *Id*. at 1040. The court replaced Juror No. 3 with Alternate No. 1, and deliberations resumed. Within minutes, the jury returned a verdict of guilty. That same date, the trial court issued a Memorandum Order Sustaining the State's Motion to Remove Juror #3 ("Memorandum Order"), and in it the trial court outlined the circumstances of his dismissal from the jury. The Memorandum Order included the following determinations regarding the dismissal:

> Based on the body of evidence heard on the matter, including juror statements 1) that [Juror No. 3] had expressed a fixed and final opinion to other jurors long before the evidence was concluded, 2) that [Juror No. 3] never really engaged with other jurors in discussion, and at one point in the deliberations, simply sat in his chair reading a magazine, 3) that [Juror No. 3] attempted to persuade the foreman that a unanimous verdict wasn't really necessary, and the foreman could sign the verdict form based on a majority vote, and 3) [sic] that [Juror No. 3] was apparently unable or unwilling to understand the assignment or follow the Court's instructions, the Court concluded that [Juror No. 3] had violated his oath in serious and material ways, that he had utterly failed to follow the Court's instructions, and that his continued service on the jury deprived the parties of their mutual right to a fair trial.

*Appellant's App.* at 390.  Five days later, on November 29, 2014, the trial court sent an email to counsel for both parties, stating that it was "satisfied" that the decision to remove Juror No. 3 was warranted, but it was "less satisfied with the manner in which the case was resubmitted to the remaining 11, plus . . . our alternate." *Id*. at 405.  In part, the trial court was concerned about a lack of an instruction to the newly-constituted jury to state that "removal in no way reflects approval or disapproval of the views expressed by the removed juror[.]" *Id*.

On December 10, 2014, Jones files a motion to set aside the verdict and asked the trial court to declare a mistrial, arguing that her rights to a unanimous verdict and to a jury trial were violated and that, following the removal of Juror No. 3, the trial court failed to instruct the jury that the removal did not reflect approval or disapproval of the views of the dismissed juror.  The trial court denied the motion, and Jones now appeals.

## Discussion and Decision

Indiana Trial Rule 47(B) provides:  "Alternate jurors . . . shall replace jurors who, prior to the time the jury returns its verdict, become or are found to be unable or disqualified to perform their duties."  Typical grounds for discharge of a juror are bias due to exposure to publicity or contact with a party or witness.  *Riggs v. State*, 809 N.E.2d 322, 327 (Ind. 2004).  However, removal may also be based on a juror's actions in the course of deliberations.  *Id*.  Our Supreme Court has recognized that a trial court "has broad discretion to

remove a juror before deliberations begin, but removing a dissenting juror after that point implicates the defendant's right to a unanimous verdict and the defendant's right to a jury trial." *Id*. Thus, although the removal and replacement of a juror during deliberations is still within the trial court's discretion, "that discretion is more limited" when removal occurs after deliberations have begun. *Leslie v. State*, 978 N.E.2d 486, 493 (Ind. Ct. App. 2012), *trans. denied*.

[15] The *Riggs* Court explained that, once deliberations have begun,

> discharge of a juror is warranted only in the most extreme situations where it can be shown that the removal of the juror (1) is necessary for the integrity of the process, (2) does not prejudice the deliberations of the rest of the panel, and (3) does not impair the party's right to a trial by jury.

809 N.E.2d at 327-28. A failure to agree, however unreasonable, is a ground for mistrial, not removal of the obstacle to unanimity. *Id*. at 328. "Removal of a juror for misconduct requires more than a refusal to negotiate further." *Id*.

[16] More recently, a panel of this court in *Wright v. State*, 12 N.E.3d 314, 317 (Ind. Ct. App. 2014), addressed juror removal after deliberations have begun, and it recognized that "refusal to deliberate" may constitute grounds for removing a juror. The *Wright* court found a California court's discussion on the subject to be instructive:

> A refusal to deliberate consists of a juror's unwillingness to engage in the deliberative process; that is, he or she will not

participate in discussions with fellow jurors by listening to their views and by expressing his or her own views. Examples of refusal to deliberate include, but are not limited to, expressing a fixed conclusion at the beginning of deliberations and refusing to consider other points of view, refusing to speak to other jurors, and attempting to separate oneself physically from the remainder of the jury. . . . A juror who has participated in deliberations for a reasonable period of time may not be discharged for refusing to deliberate, simply because the juror expresses the belief that further discussion will not alter his or her views.

*Id.* (quoting *People v. Cleveland*, 25 Cal.4th 466, 106 Cal.Rptr. 313, 21 P.3d 1225, 1237-38 (2001)).

[17] Here, after receiving two notes from the jury indicating an inability to reach a unanimous decision, the trial court brought the full jury into the courtroom to discuss the situation. At that time, the Foreman answered the trial court's inquiries, which asked whether everyone was participating and everyone had been listening to each other, by responding in the affirmative, including, "Yes, to varying degrees." *Tr.* at 1006. However, the prosecutor noted that, while the Foreman was so stating, other jurors were expressing disagreement by shaking his or her head "no." *Id.* at 1013. Counsel for Jones agreed, "There were at least five jurors who were disagreeing visibly with the foreman." *Id.* Thereafter, the trial court spoke to the two Alternates, who stated that the Foreman had not accurately described Juror No. 3's participation. Both of the Alternates stated that Juror No. 3 had made comments during trial to indicate that he had reached a decision before the evidence was completed and that he had entered the deliberations process with a set mindset. The Foreman also

stated that Juror No. 3 eventually quit making eye contact and, later, was leafing through magazines. When questioned alone, Alternate No. 2 – who the trial court observed could offer objectivity given that, even if Juror No. 3 was removed, she was not going to be on the jury – said that Juror No. 3 did not understand the jury's task of attempting to reach a unanimous verdict. When the Foreman was thereafter questioned outside the presence of all other jurors, he likewise reported that Juror No. 3 did not understand the concept of a unanimous decision. Ultimately, the trial court determined that Juror No. 3 was not able to understand or follow the jury instructions, or was otherwise unwilling to participate in deliberations, and it removed him.

[18] We cannot overlook that Juror No. 3 was the only juror voting for acquittal, and that the Foreman initially described him as participating in deliberations and listening to the other jurors, indeed noting that there had been a "great deal of discourse among jurors," including Juror No. 3. *Tr.* at 1006-07, 1011, 1029. We recognize that later statements by the Alternates and the Foreman indicated that Juror No. 3 did not engage in deliberations and he did not understand his task as a juror. Accordingly, the descriptions of Juror No. 3's participation or lack thereof were not consistent. *See Wright*, 12 N.E.3d at 319 (noting that, although some jurors informed trial court that juror in question was asleep and made his decision before evidence was completed, such description was "not undisputed" because other jurors told trial court that juror at issue was participating sometimes). Assuming without deciding that the trial court did not abuse its discretion when it decided to remove Juror No. 3, we find that the

record before us as it concerns his removal, nevertheless warrants a reversal of Jones's conviction. Our Supreme Court in *Riggs* expressly stated that removal of a juror at a time after deliberations have begun (1) "demands a carefully developed record as to the grounds for removal," and (2) "also requires precautions to avoid inappropriate consequences from the removal." *Riggs*, 809 N.E.2d 327.

[19] As to the requirement of "a carefully developed record," we commend the trial court for the thorough and thoughtful process it followed by examining the full jury, followed by just the two Alternates, Alternate No. 2 alone, and the Foreman individually. However, in the present case, the trial judge did not interview Juror No. 3, and an exchange with him may have provided the trial court with insight as to whether he considered the evidence, as well as other jurors' viewpoints, and at what point in the process he reached his decision.[3] We find that, here, the record was not as fully developed as is required to justify the extreme remedy of Juror No. 3's removal. *See Scott v. State*, 829 N.E.2d 161, 167-68 (Ind. Ct. App. 2005) (finding that, where juror at issue was not

---

[3] By our determination today, we do not intend to convey that a trial court must in every case speak with the juror whose removal is in question; however, our review of the relevant case law reveals a number of cases in which the trial court chose to speak with that juror in order to further investigate the situation. *See Riggs v. State*, 809 N.E.2d 322, 328 (Ind. 2004) (juror who had explained to trial court that "he was trying to fulfill his role as a juror and was making a decision based upon the evidence" was improperly dismissed); *Dixon v. State*, 524 N.E.2d 2, 4 (Ind. 1988) (trial court properly dismissed juror who would not reach decision and told trial judge, "It's not something I want on my head."), *cert. denied*, 499 U.S. 909 (1991); *Leslie v. State*, 978 N.E.2d 486, 493-94 (trial court did not abuse its discretion when it dismissed juror who told court that she could not render decision based on evidence), *trans. denied*.; *Lichti v. State*, 827 N.E.2d 82, 91 (Ind. Ct. App. 2005) (trial court did not abuse discretion when it dismissed two jurors who told court that their religious beliefs constrained them from deliberating on Sunday, which trial court determined negatively affected integrity of deliberative process), *vacated in part on other grounds*, 835 N.E.2d 478 (Ind. 2005).

questioned by trial court, "[T]he record is not as developed as is required for a juror to be removed once deliberations have begun.").

[20] In addition to the requirement of a "carefully developed record," the *Riggs* Court stated that removal of a juror after deliberations have begun "requires precautions to avoid inappropriate consequences from the removal." 809 N.E.2d at 327. There, after the trial judge had dismissed a juror and placed an alternate on the jury, it asked each juror, in the presence of the others, if the removal of the juror would interfere with their ability to render a fair and impartial verdict, to which each responded "no." *Id*. at 326. Riggs was convicted, and on appeal our Supreme Court found that the record did not support the removal of the juror and that Riggs's constitutional right to an impartial jury was violated. *Id*. at 328-29. In analyzing the issue of juror removal, our Supreme Court observed, "[T]he trial court must be careful not to convey improper messages, either verbal or silent, to the other jurors, who may infer that the juror was dismissed because of his or her view of the case." *Id.* at 329. Although Riggs's trial judge had asked each juror whether the removal of the one juror would interfere with an ability to reach a fair and impartial verdict, the Supreme Court determined that the trial court's "general inquiry" did not focus sufficiently on the problem of the potential effect of the removal on the jury. *Id*. Because another juror might conclude that the removal of the juror implied trial court disagreement with the removed juror's views on the merits of the case, the *Riggs* Court directed: "Removal *should be accompanied by*

*an instruction* that removal in no way reflected approval or disapproval of the views expressed by the juror." *Id*. (emphasis added).

[21] Here, the trial court neither posed the "general inquiry" to the remaining jurors and Alternate No. 1 as to whether the removal of Juror No. 3 would interfere with their ability to render a fair and impartial verdict, nor instructed the jury that removal did not reflect the trial court's approval or disapproval of the views expressed by the dismissed juror. Indeed, "no steps were taken to minimize the effect of removal on remaining jurors[.]" *Riggs*, 809 N.E.2d at 329. Accordingly, we vacate the judgment of the trial court and remand for a new trial. *See Wright*, 12 N.E.3d at 321-22 (removal of juror was not justified, but even if replacement of juror had been permissible, juror's removal necessitated additional jury instruction).[4]

[22] Vacated and remanded.

Najam, J., and Barnes, J., concur.

---

[4] We observe that this court in *Rector v. State*, 826 N.E.2d 12 (Ind. Ct. App. 2005), although declining to apply *Riggs* (because *Riggs* was decided before Rector's habitual offender determination had become final), nevertheless posited that "*Riggs* does not mandate such an instruction in all cases." *Id*. at 20. The *Rector* court explained that, there, it was "patently obvious" that the juror in question was removed for bringing into deliberations a "Citizen's Rule Book," which told jurors to ignore the law, and after the juror's removal, the remaining jurors and alternate stated to the court that they could render a verdict based exclusively on the evidence and law, without consideration the "cloud of extraneous material," *i.e.* the book. The *Rector* court thus found the trial court's inquiry to the remaining jurors was adequate under the circumstances and, even in light of the *Riggs* decision, no other instruction was necessary. We do not disagree with *Rector* in that regard, and find that our decision today, holding that an instruction was warranted under the circumstances of this case, is distinguishable from and not in conflict with *Rector*.