## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 19 2017, 8:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara S. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Dickson, II, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 19, 2017 <br><br> Court of Appeals Case No. <br> 84A01-1611-CR-2705 <br><br> Appeal from the Vigo Superior Court <br><br> The Honorable John T. Roach, Judge <br><br> Trial Court Cause No. <br> 84D01-0802-FB-725 <br> 84D01-1404-FB-899 |

**Mathias, Judge.**

[1]   John Dickson, II ("Dickson") appeals his convictions for Class B felony sexual misconduct with a minor and Class A misdemeanor public indecency. Dickson

argues that the trial court abused its discretion when it failed to examine a juror about potential bias.

[2] We affirm.

## Facts and Procedural History

[3] Around 1:00 a.m. on April 2, 2014, thirty-six-year-old Dickson picked up fifteen-year-old F.F. from outside her mother's home in his white Ford Expedition ("Expedition"). Dickson had previously been romantically involved with F.F.'s older sister Katy, and he told F.F. that night that they were going to go look for Katy. Dickson drove the two around for several minutes before he eventually stopped the Expedition on a dimly lit side street.

[4] At approximately 2:00 a.m., Terre Haute Police Department Officer Brian Bourbeau ("Officer Bourbeau") was dispatched to an intersection near Dickson's parked vehicle due to a report of individuals knocking over trash cans and a basketball hoop. While Officer Bourbeau was surveying the area, he came across Dickson's parked Expedition and he illuminated the vehicle using the spot light on his patrol car. Officer Bourbeau noticed a person pop up in the backseat of the Expedition and then immediately pop back down. He exited his patrol vehicle, approached the driver side window, and shone his flashlight into the interior of the Expedition. Officer Bourbeau saw Dickson and F.F. in the backseat unclothed; he also observed Dickson on top of F.F. and that Dickson's penis was erect. He instructed Dickson and F.F. to get dressed and to move to the front of the vehicle.

[5] Once Officer Bourbeau was able to speak with F.F. privately and discern that she was only fifteen, Dickson was arrested. The State charged Dickson with Class B felony sexual misconduct with a minor, Class B felony attempted sexual misconduct with a minor, and Class A misdemeanor public indecency.

[6] A three-day jury trial commenced on August 29, 2016. After the evidence was presented and the jury had been deliberating for approximately four hours, the foreperson notified the bailiff that the jury was at an impasse because of a "holdout." Tr. Vol. V, p. 141. The foreperson told the bailiff that the holdout (the "holdout juror") had indicated to the jury that she had "similar experiences to the alleged victim." *Id.* The bailiff immediately notified the trial court; however, while the trial court was gathering both parties to explain the situation, the jury informed the bailiff it had reached a verdict. As a result, the trial court gave each side "about thirty minutes to do some research, tell me how you want to proceed." *Id.*

[7] After reconvening, Dickson's counsel moved for a mistrial, and the trial court denied it stating:

> I have not found any authority to question jurors once they said they have reached a verdict. I have not found any authority to start questioning the jurors as to their deliberations. I think it is improper to do that. . . . Um, we don't have any evidence of misconduct, now that we have been told we have a verdict. So I don't think I can declare a mistrial at this point.

*Id.* at 146–47. Dickson's counsel then asked the court if the jury indicated whether or not it had a problem before it reached its verdict. The court

responded, "The only thing the Jury said was we are deadlocked, we have a hold out, and the hold out just now said she had similar experiences to the victim, that's all she said." *Id.* at 147. Thereafter, the trial court called the jury back in, and the jury found Dickson guilty of all charges.[1]

[8] At Dickson's sentencing hearing on October 26, the trial court merged the Class B felony misconduct with a minor with the Class B felony attempted sexual misconduct with a minor. The trial court then sentenced Dickson to concurrent terms of fifteen years for the Class B felony and one year for the Class A misdemeanor public indecency. The trial court also revoked seven years of a prior suspended sentence,[2] and thus Dickson was sentenced to a total of twenty-two years executed in the Department of Correction.

[9] On November 21, Dickson filed a motion to correct error arguing that his Sixth Amendment right to a fair and impartial jury was infringed when the court declined to remove the holdout juror who expressed she had encountered "similar experiences to the victim." On December 21, the trial court denied Dickson's motion to correct error. Dickson now appeals.

## Discussion and Decision

[10] Indiana Trial Rule 47 explains, "Alternate jurors . . . shall replace jurors who, *prior to the time the jury returns its verdict*, become or are found to be unable or

---

[1] Each juror was polled individually and affirmed each verdict as their own. Tr. Vol. V, pp. 152–54.

[2] Dickson was on probation at the time he committed the instant offenses.

disqualified to perform their duties." (emphasis added). A trial court has broad discretion to remove a juror before deliberations begin, but removing a dissenting juror after that point implicates the defendant's right to a unanimous verdict and the defendant's right to a jury trial. *Riggs v. State,* 809 N.E.2d 322, 327 (Ind. 2004).

[11] Although removing a juror after deliberations have begun is ultimately a matter requiring deference to the trial court's judgment, it raises a number of considerations not present before deliberations begin. *Id.* As a result, once deliberations have begun, the discharge of a juror is warranted only in the most extreme situations where it can be shown that the removal of the juror: (1) is necessary for the integrity of the process, (2) does not prejudice the deliberations of the rest of the panel, and (3) does not impair the party's right to a trial by jury. *Id.* at 327–28. Additionally, our supreme court has noted that the "trial court is in the best position to evaluate whether a mistrial is warranted because it can assess first-hand all relevant facts and circumstances and their impact on the jury." *Ramirez v. State*, 7 N.E.3d 933, 935 (Ind. 2014).

[12] Dickson contends that the trial court abused its discretion when it failed to hold a hearing and examine the holdout juror under oath to determine whether her similar experience to that of the alleged victim left her incapable of rendering a fair verdict. We disagree.

[13] Here, the trial court was told that the jury had reached a verdict before it was able to gather both parties. Thus, the trial court never had a suitable

opportunity to question the holdout juror. Indiana Trial Rule 58(A) commands the actions the trial court took as the rule states, "upon a verdict of a jury . . . the court shall promptly prepare and sign the judgment." The court explained the situation when it denied Dickson's motion to correct error:

> After reporting a "deadlock," the jury obviously continued to deliberate while waiting for a response from the court, which was held up while the parties re-assembled in court. In the interim, the jury was able to reach verdicts. The first note itself did not reveal any wrongdoing or impropriety on the part of the "holdout." The presumption is the jury followed the court's instructions, and resolved their "deadlock" when they completed the guilty verdict forms for each count, and destroyed the forms not reflecting their vote.

Appellant's Supp. App. Vol. III, p. 6.

[14] The situation here is factually distinguishable from the cases which Dickson has cited. In *Gavin v. State*, a panel of this court held that the trial court abused its discretion when it removed a juror based on an inaccurate note from the juror stating that he could not reach a decision. 671 N.E.2d 440, 447 (Ind. Ct. App. 1996). In that case we explained, "It may reasonably be inferred from the record that, at the point the note was written, the jury was deadlocked eleven to one. Had [the juror] not been dismissed and replaced with an alternate, there likely would have been, at the very least, a hung jury." *Id.*

[15] It can be reasonably inferred here that the jury was deadlocked eleven to one at the time the foreperson told the bailiff that there was a "holdout" who had "similar experiences to the alleged victim." Thus, *Gavin* does not apply because

by the time the trial court was able to gather the necessary parties, the jury had reached a verdict. This is not a case where a juror was dismissed, and there was no point at which the trial court could have questioned the holdout juror had it wanted to; the jury had reached its verdict by the time the court gathered both parties to explain the situation. *See Lewis v. State*, 424 N.E.2d 107, 111 (Ind. 1981) (holding that when a jury is deadlocked "[t]he proper procedure is for the court to call the jury back into open court in the presence of all of the parties and their counsel . . . .").

[16] Dickson also cites to this court's decisions in *Wright v. State*, 12 N.E.3d 314, (Ind. Ct. App. 2014) and *Scott v. State*, 829 N.E.2d 161 (Ind. Ct. App. 2005) to support his argument. In *Wright*, we held the trial court abused its discretion when it removed a juror who had come to a not-guilty decision because he believed the victim lied. 12 N.E.3d at 319. In *Scott*, we found the trial court abused its discretion when it removed a juror prior to deliberations who had "reached a different conclusion than the other jurors based upon his own life experiences." 829 N.E.2d at 168. Here, the holdout juror reached a decision. She never intimated that she would not change her mind, *see Wright*, 12 N.E.3d at 320, or that she could not reach a decision because of her life experiences, *see Scott*, 829 N.E.2d at 168. And even if she had, removal based on those circumstances alone would have been improper. *Id.*; *Wright*, 12 N.E.3d at 319.

[17] Dickson also argues that the trial court abused its discretion when it did not sequester the holdout juror immediately after learning that she had similar experiences to F.F. We initially note that the trial court would have erred had it

questioned the holdout juror outside of the presence of both parties. *Nichols v. State*, 591 N.E.2d 134, 138 (Ind. 1992). As soon as the court learned of the holdout juror and her comments, it attempted to gather both parties together for consultation, but by the time they had arrived in the courtroom, the jury had reached its verdict.

[18] And even if the trial court was permitted to sequester the holdout juror immediately, it was under no obligation to do so. Instead, "the trial court is obligated to take the remedial action of interrogating the jury only if the court determines, in its discretion, that the risk of prejudice appears substantial, as opposed to imaginary or remote only." *Agnew v. State*, 677 N.E.2d 582, 584 (Ind. Ct. App. 1997), *trans. denied* (citations and quotations omitted). The trial court determined that the holdout juror's similar situation to the alleged victim did not prejudice Dickson when it stated, "The first note itself did not reveal any wrongdoing or impropriety on the part of the 'holdout.'" Appellant's Supp. App. Vol. III, p. 6. Because the court determined there was no impropriety, and because the jury reached a verdict, the trial court had no responsibility to interrogate the jurors or to take other remedial action. *See Isaacs v. State*, 673 N.E.2d 757, 761–62 (Ind. 1996) (holding that a juror's remarks to the jury about her personal experience as a rape victim did not raise an issue of jury impropriety).

[19] Moreover, the trial court stated that it would have called the jury in and done what Dickson requested if the jury had not first reached a verdict. The court explained:

> As we were waiting to figure out what we were going to do, we got a call back that said, we have a verdict. So, it, ordinarily if a jury calls in says we are deadlocked, I would bring them in and say, keep deliberating, and we would give them a chance to work through the deadlock. What we have right now, sitting here right now, is a message that they have worked through the deadlock and they have a verdict.

Tr. Vol. V, p. 147. There is no evidence that the holdout juror prejudiced Dickson's rights in any way; instead, the jury was able to work through its deadlock and reach a unanimous verdict. The court aptly stated at the time, "I think to do anything other than to take the verdict and poll the Jury and proceed accordingly is, poses more problems than it potentially solves, because we have a verdict." *Id*. at 149. There was no basis for the trial court to question the holdout juror after a verdict was reached, and as such, the court did not abuse its discretion by failing to do so.

## Conclusion

Based on these facts and circumstances, we conclude that the trial court did not err by failing to interrogate the holdout juror after a verdict had been reached, or take any other remedial action. Therefore, the trial court did not abuse its discretion when it denied Dickson's motion to correct error.

Affirmed.

Vaidik, C.J., and Crone, J., concur.